CASE 29—LIQUIDATION OF BUILDING AND LOAN ASSOCIA-
TION—MARCH 18.

# Sumrall, Etc. v. Commercial Building Trust's Assignee, Etc.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

BUILDING AND LOAN ASSOCIATIONS—LIQUIDATION—COMMON AND PRE-
FERRED STOCK.—In the liquidation of the affairs of an insol-
vent building and loan association the preferred stock is not
entitled to preference over the common stock in the distribu-
tion of assets in the absence of an express provision of the
charter to that effect, the preference being limited to dividends
alone in a going concern.

CARUTH, CHATTERSON & BLITZ FOR THE APPELLANT. (SUMRALL
& SUMRALL OF COUNSEL.)

1. Appellee corporation was organized under the present constitu-
tion, but prior to the passage of the corporation act of 1893,
nearly all of the fully paid-up preferred stock now in existence
being issued since the passage of said corporation act. Said
corporation act provides that when preferred stock is issued
by a corporation, it shall, on the dissolution, either voluntarily
or involuntarily, be entitled to be redeemed at par before any
distribution of the assets to the common stockholders. Ky.
Stats., sec. 564.

2. The legislature reserved the right to alter, amend or repeal chap-
ter 56 of the General Statutes, under which the corporation was
organized. Genl. Stats., chap. 56; Dusenbury v. Looks (Mich.),
69 N. W., 929; Sherman v. Smith, 1 Black. (U. S.), 587.

3. The corporation act went into effect at once as to all matters not
inconsistent with its provisions—and all acts of the corporation
not inconsistent with those provisions were and are acts done
under and by authority of said act. Ky. Stats.. sec. 573.

4. The fully paid-up preferred stock was issued under the authority
of the charter and by-laws, and in accordance with section 564,
Kentucky Statutes, was paid for in cash and at par, and repre-

sented by the officers, agents and common stockholders of the corporation, to be preferred above the common stock, and that the common stock fund was held sacred for the maturity and re-payment of the preferred.

5. It is an inherent power in a corporation to issue preferred stock sub-ject to such restrictions as are imposed by statute, and these re-strictions have been complied with in this fully paid-up pre-ferred stock issue. Kent v. Quicksilver Mining Co., 78 N. Y., 159; McGregor v. Home Ins. Co., 33 N. J. Eq., 181-186.

6. The statute prefers this stock as to the capital or assets, as well as to dividends or interest. Ky. Stats., sec. 564; Cook on Corp., 1 vol., sec. 278; McGregor v. Home Ins. Co., 33 N. J. Eq., 181 Hamlin v. Cont. Trust Co., 78 Fed. Rep., 664.

7. This court has recognized the right of a building and loan asso-ciation to issue preferred stock, and enforce contracts in rela-tion thereto. Tate v. Lou. B. & L. Assn., 19 Ky. Law Rep., 1962.

8. The law as to estoppel and acquiescence also applies under the pleadings. Herman on Estoppel, vol. 2, pp. 1396-1399; vol. 1, pp., 709-11; Maxville, Willisburgh & Lou. T. Co. v. Barnes, 14 Ky. L. R., 431.

9. The court erred in sustaining the demurrer and dismissing answer and cross-petition.

SAME COUNSEL IN A SUPPLEMENTAL BRIEF FOR THE APPELLANT, SUM-RALL.    (WATTS & WATTS OF COUNSEL.)

1. The issue and sale of paid-up preferred stock is common to bus-iness corporations. Safety Bldg. & L. Co. v. Ecklar, opinion March 11, 1899.

2. The issue of paid-up and preferred stock by a building and loan association is "ultra vires." Safety Bldg. & L. Assn. v. Ecklar, supra.

3. The obligation which appellants purchased, being void and non-enforcible, the consideration for the payment therefor has wholly failed, and appellants are creditors of the association and entitled to recover back the moneys so paid; and to an accounting and restitution. Thompson on Corporations, vol. 2, sec. 984; Anthony v. Household Sew. M. Co., 16 R. I., 571; s. c. 5 L. R. A., 575; Louisana y. Wood, 102 U. S., 294; Brown v. Atchison, 39 Kan., 37 (17 Pac. Rep., 465); Parkersburg v. Brown, 106 U. S., 487-503; Chapman v. Douglas Co., 107 U. S., 348-359; Pul. Pal. Car Co. v. Cent. Trans. Co., 171 U. S., 138;

Manville v. Belden Min. Co., 17 Fed. Rep., 425; Paul v. Kenosha, 22 Wis., 266; Newcastle North. R. Co. v. Simpson, 23 Fed. Rep., 214; Moore v. Swanton Tanning Co., 15 Atl. Rep., 114; Ford & Warren v. Leatherer, 4 Bibb., 512.

WILLIAM J. WATTS FOR APPELLANTS WILLIAMSON, &c.    (JOSEPH S. BOTTS, W. W. & J. R. WATTS OF COUNSEL.)

1. The contract.  White v. Boreing, 20 Ky. Law Rep., 210; Kent v. Quicksilver Mining Co., 78 N. Y., 159; Holyoke B. & L. A. v. Lewis, 27 Pac. Rep., 872; Bergman v. Assn., 27 Minn., 275; McKenna v. Diamond State Loan Assn., 18 Atl. Rep., 905; Pioneer Savings & Loan Co. v. Brockett, 58 Ill., 204; Englehardt v. Fifth Ward Permanent Dime Savings & L. Assn., 148 N. Y., 281; Thompson on Bldg. Assns., 31; Thompson's Com. on Corps., sec. 940; Endlich on Bldg. Assns. (2d ed.), sec. 269; Tate v. Lou. Bldg. Assn., 19 Ky. Law Rep., 1962; Genl. Stat., chap. 56, act of April 15, 1882; Genl. Stats., Bullitt & Feland ed. 1887, p. 773; act of 1893, secs. 564, 566, 577, 854, 855, 856, 857, 861 Ky. Stats.; Frankfort Bridge Co. v. City of Frankfort, 18 B. M., 46; Angell & Ames on Corps., sec. 256; McGregor v. Home Ins. Co., 33 N. J. Eq., 181; Cook on Corps. (4th ed.), sec. 278.

2. Notice.  Oil City Land & Improvement Co. v. Porter, 99 Ky., 254; Wight v. Shelby R. R. Co., and Allen v. same, 16 B. M., 4; First Natl. Bk. v. Keifer, 15 Ky. Law Rep., 457; Bell & Coggeshall Co. v. Ky. Glass Works, 20 Ky. Law Rep., 1092; Park v. Railroad Co., 23 Ind., 572; Jenkins v. Prewitt, 7 Blackford, 329; Walker v. R. R. Co., 34 Miss., 255; Ellison v. Mobile & Ohio R. R. Co., 36 Miss., 572; Cook on Stock and Stockholders, sec. 54; Endlich on Bldg. Assns. (2d ed.), sec. 269; Thompson's Com. on Corps., sec. 941; Bertche v. Equitable, &c., Assn., 48 S. W. R., 954.

3. Innocent purchasers. . American Wire Nail Co. v. Bayless, 91 Ky.; 94; Kent v. Quicksilver Mining Co., 78 N. Y., 159.

4. Vested rights.  Kent v. Quicksilver Mining Co., 78 N. Y., 159; Holyoke Bldg. & L. Assn. v. Lewis, 27 Pac. Rep., 872; Bergman v. Assn., 29 Minn., 275; McKenna v. Diamond State L. Assn., 18 Atl. Rep., 905; Niblack's Benefit Societies (2d ed.), 113; Thompson on Bldg. Assns., 31; Thompson's Com. on Corps., sec. 946; Cook on Stock and Stockholders, sec. 700a; Endlich on Bldg. Assns. (2d ed.), sec. 269; Cook on Corps. (4th ed.), sec. 4a, and numerous cases there cited.

5. Laches, acquiescence, assent and estoppel.  American Wire Nail

Sumrall, &c., v. Commercial Building. Trust's Assignee, &c.

Co. v. Bayless, 91 Ky., 94; Oil City Land & Improvement Co. v. Porter, 99 Ky., 254; Maxville, &c., Turnpike v. Barnes, 14 Ky. Law Rep., 431; Pocantico Water Co. v. Low, 46 N. Y. S., 633; Bannigan v. Bard, 134 U. S., 291; Cook on Corps. (4th ed.), secs. 41, 732; Kent v. Quicksilver Mining Co., 78 N. Y., 159.

6. Acts *ultra vires* and void.   American Wire Nail Co. v. Bayless, 91 Ky., 94; Pocantico Water Co. v. Low, 46 N. Y. S., 633; Maxville, &c., Turnpike v. Barnes, 14 Ky. Law Rep., 431; Amer. & Foreign Christian Union v. Matilda Yount, &c., 1st. Ky. Law Rep., 8; Springfield, &c., Turnpike Co. v. Trustees of Harrodsburg, 11 Ky. Law Rep., 309; Morton, &c., v. Hamilton College, 100 Ky., 281; Ger. Natl. Bank v. Louisville Butchers' Hide. &c., Co., 16 Ky. Law Rep., 881; Cook on Corps. (4th ed.), secs. 30, 268, 269, 671, 672, 673, 681, 775; Cook on Stock and Stockholders (3d ed.), sec. 278, and note; Hohenshell v. Home Savings & L. Assn., 41 S. W. R., 948; Barr v. N. Y., &c., R. R. Co., 125 N. Y., 263; Thompson v. Lambert, 44 Iowa, 239; Martin v. Niagara, &c., Co., 129 N. Y., 165; Wierman v. International, &c., Assn., 67 Ill. App., 550; Kadish v. Garden City, &c., Assn., 151 Ill., 531; Bertche v. Equitable, &c., Assn., 48 S. W. R., 954.

J. C. POSTON AND CLARENCE DALLAM FOR THE COMMON STOCK-HOLDERS.   (M. B. BOWDEN OF COUNSEL.)

1. The rights of holders of preferred stock depend on the contract; and are solely a question of the interpretation of contracts. Beach on Private Corporations, sec. 499; Cook on Stockholders (3d ed.), sec. 267; Thompson on Corporations, secs. 2262, 2263.

2. Preferred stock of a corporation when not explicitly preferred in the distribution of the assets, is preferred only as to dividends. Beach on Private Corporations, sec. 507; 2 Waterman on Corps., p. 155; Cook on Stockholders (3d ed.), secs. 267, 278; Thompson on Corps., sec. 2280; *In re* London India Rubber Co., 5 L. R. Eq., 519.

3. A contract of guaranty can not be extended beyond its strict terms; and must be interpreted according to the intention of the parties. Cambria Iron Co. v. Keynes, 56 Ohio St., 501; Pease Piano Co. v. Matthews, 48 Pac. Rep., 449; Lininger, &c., v. Webb., 70 N. W. R., 519.

4. If this is a guaranty by the common stockholders of the contract of the corporation, it is within the Statute of Frauds and unenforceable. Ky. Stats., sec. 470.

5. Where neither the charter, by-laws nor contract under which preferred stock is issued contemplates insolvency or the winding up of the company, the preference is to dividends only, and in the distribution of assets all become common stockholders, regardless of the preference. *In re* India Rubber Co., 5 L. R., Eq., 519.

6. The so-called guaranty, if not confined to a guaranty of dividends, was an estimate as to when the stock would be matured, and was applicable to a going company only. *In re* London India Rubber Co., 5 L. R. Eq., 519; Bertche v. Equitable, &c., Assn., 48 S. W. R., 954.

7. Where a building and loan association guarantees the maturity of its stock within a certain specified time, it constitutes at best but a guarantee of such dividends as will mature the stock in the given time.

8. All contracts of building and loan associations to the effect that after the payment of a certain sum, less than the face value, stock shall be considered fully paid, are *ultra vires* and void. Latimer v. Equitable L. &c. Co., 81 Fed. Rep., 776; Bertche v. Equitable L. &c. Co., 48 S. W. R., 954; International B. & Inv. L. Assn. v. King, 68 Ill. App., 640; Gibson v. Safety Homestead & L. Assn., 69 Ill. App., 485; State, *ex rel* v. Equitable L. &c. Co., 41 S. W. R., 916; Baltimore B. & L. Assn., v. Powhatan Imp. Co., 30 Atl., 275; Fisher v. Patton, 33 S. W. R., 450 and 34 S. W., 1096.

9. The pledge by a corporation of part of its capital for the benefit of a class of its shareholders is *ultra vires* null and void. Miller's Exr. v. Batterman's Trustee, 47 O. St., 158; Weirman v. Int. B. L. & Inv. Union, 87 Ill. App., 550; Latimer v. Equitable, &c., Assn., 81 Fed. Rep., 776; Bertche v. Equitable, &c., Assn., 48 S. W. R., 954.

10 Paid-up stock in a building and loan association can not be regarded as indebtedness of the association, especially where, as in this case, the charter provides for the creation of indebtedness. Towle v. Am. B. & L. Assn., 75 Fed. Rep., 928.

11. There can be no unpaid subscription to the stock of a building and loan association. Towle v. Am. B. & L. Assn., 75 Fed. Rep., 928.

12. Section 564 of the Kentucky Statutes does not restrict the inherent right of a corporation to give to the different classes of stock such preference as it desires; nor does it prescribe that

Sumrall, &c., v. Commercial Building Trust's Assignee, &c.

all preferred stock shall be entitled to a preference in capital, on dissolution, as well as in dividends, while in operation.

CHARLES C. FOX FOR THE APPELLEES, JOHN L. SMITH, &c.

1. What did the corporation mean to do and undertake to do when it guaranteed the maturity of the preferred stock?
2. Counsel discussed further the question of *ultra vires*.

WILLIAM FURLONG AND JOHN ROBERTS FOR APPELLEES' COMMON STOCKHOLDERS.

1. There is no authority under chapter 56 of the General Statutes of Kentucky, the law under which the Commercial Building Trust was organized, for the issue of preferred stock. Genl. Stats., ch. 56.
2. If preference is given to any stock it must be to the old stock already issued and not to stock to be thereafter issued, as was attempted in this case, and the requirements of the statute must be strictly followed, which was not done. Genl. Stats., p. 773, act of April 15, 1882.
3. The case of Tate v. Louisville Building Assn., 19 Ky. Law Rep., 1962, is not applicable to this case.
4. The alleged preferred stock must be withdrawn in the manner provided in the by-laws of the corporation. Sec. 9 of by-laws.
5. The alleged preference or guaranty does not mature for seven years and is a mutual agreement, based upon the alleged preferred stockholders performing certain conditions, which they have not done, and the common stockholders are therefore released. Am. & Eng. Ency. of Law, vol. 3, p. 916; and cases there cited; Alabama Gold Life Ins. Co. v. Garmany, 74 Ga., 51. That is to say, the agreements of the common stockholders and the agreements of the preferred stockholders are interdependent and the contracts upon both sides becoming without fault of either, impossible of performance, the mutual obligations growing out of the mutual contracts are indiscriminately annulled, and the avails of the assets should be distributed among both classes, without discrimination, in proportion as each class contributed to provide the assets.

FAIRLEIGH, STRAUS & EAGLES, FOR APPELLEE—THE ASSIGNEE.

(Counsel submitted the case to the court with the suggestion that it was not expedient, if proper, for the assignee, being a mere

stakeholder, to argue the correctness or incorrectness of the judgment of the court below.)

CHIEF JUSTICE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The Commercial Building Trust is a corporation organized in February, 1892, under chapter 56 of the General Statutes. The general nature of its business was to "lend its money to its stockholders, especially with the view of aiding them to procure homes, and, in case of a surplus not needed by the stockholders, to other persons." Articles of Incorporation, p. 8. The object of the corporation was "to afford its members a safe and profitable investment for their earnings, and an opportunity to obtain loans upon easy terms, to purchase homes, and establish themselves in business." By-laws, p. 9.

The capital stock was to consist of $10,000,000—100,000 shares, of the par value of $100 each—of preferred stock; and $1,000,000—1,000 shares, of the par value of $1,000 each—of common stock. The former, or preferred stock, was to be subscribed for and paid in upon such terms, and at such times, as the by-laws might prescribe; being in installments of small amounts, payable periodically or in larger payments, at the election of the subscriber. The common stock was to be subscribed for and paid in upon such terms, and at such times, as the board of directors might, from time to time, determine, and it might be issued in monthly or other periodical series. We conclude, therefore, that the business of the concern, to all practical intents, was that of an ordinary building and loan associa; tion, so extended and amplified, however, as to embrace objects and purposes wholly foreign to such associations proper, and which have been condemned by this court in numerous cases.

The articles of incorporation provide that "the preferred

stock is guaranteed by this corporation to mature, and be payable, in seven years from the date of the payment of the first installment paid on said stock."

And a by-law provides that the funds of the common stock "shall constitute the guaranty for the maturity of the preferred stock."

This preferred stock was to be issued in various classes, in some of which the dividend to be paid was at the rate of 8 per centum per annum, and in others at the rate of 10 per centum per annum, all payable semi-annually.

As soon as organized, the corporation began business, and issued, from time to time, both common and preferred stock.     Becoming insolvent, however, it made, in June, 1897, for the benefit of its creditors, an assignment of all its assets to the Columbia Finance & Trust Company.     In the administration of the trust, the question was presented to the chancellor, in a suit brought for a settlement of the estate, whether, there not being enough money to pay the alleged preferred stockholders in full, the entire funds of the corporation should be distributed to them, to the exclusion of the common stockholders.

The chancellor answered this question by holding "that none of the stock of the defendant corporation is entitled to a preference over other stock in said corporation, and that all stockholders, indiscriminately, shall share equally in the distribution of the assets of the corporation in the hands of the assignee, in proportion to the amounts paid into the corporation by them, respectively, on their stock, after the payment of its debts, and the proper costs, expenses, and charges of the assignee in the execution of the trust."

The correctness of this judgment is the sole question presented on this appeal.   Without reference, for the pres-

ent, to certain interesting questions ably discussed by counsel, involving the validity of the issual of preferred stock by this corporation, we turn at once to a consideration of the terms of the contract by which the corporation guaranteed that its preferred stock should "mature and be payable in seven years from the date of the payment of the first installment paid on said stock."

This is the only provision on the subject of guaranty to be found in the articles of incorporation, and it seems to apply only to installment stock. So construing it, the provision means simply that, upon the subscriber for this stock making his monthly payments of 60 cents per share for the period of seven years, or $50.40 in the aggregate, the corporation guaranteed that the dividends thereon would so accumulate as that the stock would be worth $1 per share. Putting the guaranty in another form, the corporation guaranteed that it would declare, at the end of seven years, a dividend of $49.60 on each share of preferred installment stock, but this stock is to be paid for in monthly installments of 60 cents per month.

In the by-laws, however, there is a further provision, by which the corporation "guaranteed the maturity of class D installment stock in seven years from the date of the first month's dues paid thereon, and class E installment stock in ten years from the date of the first month's dues paid thereon, and class F paid-up stock in seven years from the date of its issuance. Here, again, is merely a guarantee that dividends sufficient to mature certain classes of installment stock and a class of paid-up stock would be declared at the end of seven years. The subscribers to this stock were members of the association, and participants in the scheme of so loaning out its funds as that the usurious rates were

to be realized.   It was by reason of the unlawful and usurious character of this scheme, which was adopted by the association .with the approval and by the votes of these members or their representatives, that the enterprise failed of execution; and, when it failed, the so-called "guarantee" was at an end.

Moreover, the guarantee on the part of the company that it would declare, in a given time, certain dividends, or dividends sufficient to mature certain stock, or an agreement that it would set apart certain other stock as a guarantee of such dividends, can not be enforced unless there are net profits—dividends proper—out of which the guarantee can be made good and the dividends paid.   The reason is because the contract does not, and can not, in the nature of things, create the relation of debtor and creditor.   The member is a shareholder in the association—a preferred one, it is true—when there are profits out of which he may be paid; otherwise, not.   Mr. Cook, in his work on Corporations, says (section 271): "The law is now clearly settled that a preferred stockholder is not a corporate creditor.   A contract that dividends shall be paid on the preferred stock, whether any profits are made or not, would be contrary to public policy, and void.   An agreement to pay dividends absolutely and at all events, from the profits when there are any, and from the capital when there are not, is an undertaking which is contrary to law and is void.   Public policy condemns, with emphasis, any such undertaking on the part of a corporation as to its preferred or guaranteed shares."   (See, also, Taft, Trustee, v. Hartford, &c., R. R. Co., 8 R. I., 310; Lockhart v. Van Alstyne, 31 Mich., 76, [18 Am. R., 156].)

The contract then is a guarantee of dividends sufficient to mature the stock, and is enforceable

only if there are profits sufficient for that purpose. In this insolvent association there are no profits, and there can be no dividends, a guarantee to the contrary notwithstanding. This may not be very material to appellant, as he is reaching after the capital and all assets on hand not profits. But it follows, from what we have said, that the guarantee has reference solely to a preference in the distribution of dividends. It has no reference to a distribution of assets apart from dividends, and especially no reference to such distribution on the winding up or insolvency of the concern. The agreement to make enough profits to mature the preferred stock in seven years, and a pledge of the common stock for that purpose, looked to a going concern; at least, it was expected to be a live and running association for seven years. It is not contended the guarantee was that the corporation was to last for that time. We think it clear that the period of winding up having arrived, with no profits on hand, the distribution of the capital and assets of the concern is not to be controlled by a provision or guarantee looking solely to the maturity of stock, or, what is the same thing, the distribution of dividends, in due course, in a running or going association.

*In re* London India Rubber Co., 5 L. R., Eq., 519, there was a provision in the company's charter securing to preferred stock a bonus or dividend out of money produced by the sale of certain property, not required by the company in the conduct of its business. This property was, in effect, pledged to the preferred stockholders, to secure this bonus or dividend, just as it is argued here we have a charge on the common stock to secure the maturity of the preferred stock by dividends large enough to mature it. It was argued in that case that the bonus or dividend should be paid out of the proceeds of the property when sold. The

court, however, said: "But I think it is plain that the 161st clause is directed to a going or continuing concern. It does not, in the slightest degree, contemplate a breaking up of the company, and is not intended to define the rights of the parties in the happening of that unfortunate event. This clause has no application to the event which has happened. The fund is not dividend. It represents the capital of the company, and, not being otherwise provided for, it must, in my opinion, as I originally decided, be divided among the shareholders pro rata, according to the amount of capital which each shareholder has in the concern; in other words, among the two classes of shareholders equally. I wish it to be considered that I decide the case upon this principle: That where there is a provision for preferential dividends, but no provision for the division of capital, upon the breaking up of the concern any surplus must be distributed among the shareholders according to their capital, without reference to their rights in respect to dividends."

So, we think here, the by-laws providing that the funds of the common stock shall constitute the guarantee for the maturity of the preferred stock means that the common stock fund was a guaranty for the accumulation—the earning—of sufficient profits or dividend to mature the preferred stock, in a continuing association, and continuing, too, on a plan or scheme well known to all its members. There is no provision in the corporation's charter or its by-laws, or in any of the certificates of stock or indorsements or specifications accompanying the stock, declaring that there was to be any preference given one class of stock over another in the capital or body of the concern. In the absence of such a provision, the stock is preferred only in the sense that it has priority in the distribution of dividends. The

contract we are considering, then, by fair construction, refers only to preferential dividends, and this is the ordinary effect to be given the use of the words "preferred stock."

In Cook on Stockholders (3d Ed.), sec. 267, it is said: "By 'preferred stock' is to be understood stock which entitles the holder to receive dividends from the earnings of the company before the common stock can receive a dividend from such earnings. In other words, it is stock entitled to dividends from the income or earnings of the corporation before any other dividend can be paid." And the same author (section 278) says: "Upon the dissolution of a corporation, and the distribution of its assets among the shareholders after the payment of the corporate indebtedness, it is the settled rule of law that, in the absence of any provision in the statutes, by-laws, or certificate to the contrary, preferred stockholders have no priority over common stockholders."

See, also, Beach on Private Corporations, sec. 507; 2 Waterman on Corp., sec. 155; 2 Thompson on Corp., secs. 2278-2280.

When we bear in mind that the corporation we are dealing with is a building and loan association, with certain underlying principles of co-operation, equality, and mutuality in its make-up not common to ordinary corporations, and which may be termed the "common law of its existence," the objections to upholding preferential contracts among members become apparent.

All such attempts are absolutely void, as contrary to the natural law of such associations. If their managers may attract investors by selling them preferred stock—preferred either as respects dividends or capital—the burdens of maintaining the organization, and in all probability all the losses of the concern,

in case of embarrassment or insolvency, will fall on the very class of members who were primarily intended to be benefited by such associations. In King v. Investment Union (Ill. Sup.) [48 N. E. 677], it was said: "The plan of issuing stock containing such agreements is entirely foreign to the purposes of the corporation contemplated by the statute under which the one at bar was organized, and we can but regard it as of no force and effect." To the same effect are the cases of Trowbridge v. Hamilton (Wash.) 52 Pac. 328, and of Wierman v. Investment Union, 67 Ill. App., 550, although in these cases a by-law undertook to authorize the contract of preference. In the case of Latimer v. Building & Loan Co., 81 Fed., 776, the question arose as to whether or not a building association, established under the statutes of Missouri, substantially similar to those of Kentucky, could provide for the issuance of paid-up stock, and secure its redemption by a trust deed upon its assets. The court held that, independent of statutory provision, a building and loan company had an implied power to receive a prepayment of its stock, and to issue paid-up stock, but that any attempt to give a preference to such stock was against the policy of the common law governing such institutions, and was against the policy of the statute, and was absolutely void. In passing upon the question in that case, the court said: "The next and last question to be considered is whether the complainant, as the holder of the certificates in question, is entitled to any preferential right in and to the property undertaken to be pledged to secure their payment. This must be answered by determining whether the defendant association had the power to make the contract so pledging such property. 'The elementary working principle of the building association scheme,' according to Endlich (Bldg. Ass'ns, sec. 122), is 'system of

[18]

perfect mutuality and reciprocity and equality of all members.' No provision is found in the organic law authorizing an association like the defendant to pledge any of its assets for the retirement or payment of any of its stock, nor is there any general power conferred by statute upon loan and building associations to issue preferred preferential stock, from which authority for pledging its assets to secure the payment of any of its stock may be inferred. Under such state of facts, it must, in my opinion, be held that the pledge of corporate assets for the retirement or payment of a certain class of its stock, in preference to others, is so violative of elementary requirements of equality and mutuality as to be absolutely void." We fully concur, therefore, in the chancellor's judgment denying any preference to the so-called preferred over the common stockholders in the distribution of the assets of this association. The suggestion that the appellees have not in fact paid anything into the concern on their stock is guarded against in the orders below by requiring proof of all claims, in the usual way, before the master. The judgment is affirmed.

The whole court sitting.