NORTH TEXAS BUILDING AND LOAN ASSOCIATION v.
A. D. HAY ET AL.

Decided March 31, 1900.

1. Usury—Assumption of Usurious Debt.

A purchaser of property who assumes a usurious debt as part of the purchase price is not entitled to plead the usury.

2. Building Associations—Becoming Stockholder by Substitution.

Where a borrowing member of a building association who has pledged his stock and given a mortgage upon land to secure his loan sells the land to another, who assumes his obligation to the association as part of the purchase price, and the association assents to the conveyance of the land, and thereafter recognizes and deals with the purchaser as a stockholder, receiving payments and dues from him on the shares of stock issued to such borrowing member, such purchaser thereby becomes a stockholder, though there be no transfer to him of the stock on the books of the association.

3. Same—Sale of All Assets Terminates Contracts with Borrowing Members—Rescission.

Where a building association, by a voluntary sale of all its assets in the interest of nonborrowing members, terminates its power to mature its stock by collecting dues and earning profits from loans as contemplated by its plan of organization, and upon which profits a borrowing stockholder has a right to rely, the latter has a right to a rescission of his loan contract, and to an equitable adjustment of his account with the association.

4. Same—Adjustment of Account, How Made.

In making such equitable adjustment of account, the borrowing member, if chargeable with no losses, should be debited with the sum loaned and legal interest thereon, and credited with all moneys paid by him, calculated on the principle of partial payments.

5. Costs of Suit.

Where, in an action brought by a borrowing member of a building association to cancel his loan contract, a rescission of the contract is had, and upon an equitable adjustment of the account a small balance is adjudged due the association, plaintiff is not entitled to recover costs because, prior to bringing suit, he had offered to pay defendant more than was awarded to it by the judgment—his pleadings making no tender, but claiming that there was nothing at all due.

ERROR from Grayson. Tried below before Hon. DON A. BLISS.

*Armstrong & Hanger,* for appellants.

*Sidney Wilson* and *W. L. Hay,* for appellees.

GILL, ASSOCIATE JUSTICE.—This suit was brought by A. D. Hay and wife and W. S. Buster and wife, defendants in error, against the corporations, the North Texas Savings and Building Association and the State National Loan and Trust Company, plaintiffs in error, to cancel two notes, one for $800 and one for $200, to cancel the liens created to secure them, and to recover usurious interest alleged to have been paid thereon by defendants in error.

The facts being undisputed, the trial court directed a verdict and rendered judgment for plaintiffs in error for $49.50. They having claimed a much larger sum to be due upon said notes, and the debt

being secured by a lien on real estate, they have brought the cause before us by writ of error for revision.

The facts may be briefly stated as follows: W. S. Buster, who resided in Whitesboro, Grayson County, Texas, was the owner of a lot in the last named place, and was desirous of building a house thereon to be used as a home for himself and wife. For the purpose of procuring the necessary funds he went to one S. F. Young, the agent of the above mentioned building association, and after some small delay obtained a loan of $600 from said association. In order to secure the payment of this sum he was required to purchase four shares in the association (thereby becoming a member thereof), and to pledge the shares and execute a lien on the lot. As evidence of his indebtedness he was required to execute a note to the association in the sum of $800, payable on or before 100 months, the estimated time of the maturity of the stock, it being stipulated that if the borrower should pay the dues on his stock and interest and other sums named in his obligation, according to its terms and the by-laws of the concern, that his indebtedness would be discharged upon the maturity of the stock. The par value of each share was $200, to be matured by the payment of dues of $1 per month per share and by the profits earned by the association derived from the loaning of money received from the various stockholders and borrowers. It is thus seen that the plans and methods of the association were in all material respects such as are usual with such concerns.

While the contract of loan stipulated that the sum borrowed was payable in 100 months, other provisions in the contract and by-laws, which were made a part of it, and the general scheme upon which the corporation was conducted, indicated that the loan was really intended to run until the maturity of the shares, which might occur after the lapse of a much longer period than the time named, depending upon the profits earned by the corporation in the conduct of its business.

On the 7th day of May, 1894, Buster procured on the same terms and conditions, and secured in like manner, a loan of $150 for which he executed his obligation for $200 and pledged a fifth share of stock. The excess over the amount actually received in each of the contracts represented what was denominated "premium." The amount of this was ascertained in the following manner: The money to be loaned was put up by the association to be bid for by members desiring to borrow, and the party bidding the highest premium, to be not less than 10 per cent nor more than 25 per cent, secured the loan. In both these transactions the premium was fixed at 20 per cent. Only shareholders could become borrowers.

The aggregate premium in these two transactions was $250, to be charged to the loans at the rate of $2.50 per month for 100 months. If the borrower exercised his right to sooner pay the loan by crediting thereon the fixed withdrawal value of the stock and paying the balance due in cash, he was entitled to have the unearned premium credited on the face of the notes. Thus, if he should decide to pay his loan in

fifty months, he would be entitled to a credit of $125 as unearned premium.

The amount of monthly payments on the two loans were fixed as follows: Six per cent per annum interest, payable monthly, $5.00; sinking fund for the redemption of the loan, one-third of 1 per cent monthly, $3.33⅓; stock dues of $1 per share per month, $5.00. Total $13.33⅓ per month, payable without diminution until the maturity of the shares.

The shares purchased by Buster were about one year old, and he was required to pay back-stock dues on them to bring them up to the date of his loan. When these transactions were consummated he built the house upon the lot according to his original purpose, using the borrowed money to pay for its construction. He paid into the association the monthly amounts called for by his contracts until the 30th day of July, 1894, when, with the consent of the association, he sold the property to A. D. Hay, one of the defendants in error; the price of the property, the easy monthly payments, and the other apparent advantages offered by the association being among the inducements to Hay to make the transaction. The consideration as between Buster and Hay was $50 cash, Hay's note for $352.50 (the price paid by Buster for his lot), and the assumption by Hay of whatever was due by Buster to the association. Thereupon one Wood was called upon to write the deed to Hay, and the parties not being in possession of the necessary data, Wood procured it from the papers in the possession of the association.

Buster had represented to Hay that his debt to the association was $750, less the credits resulting from payments made by him, but Wood, in writing the deed, was controlled by the data procured from the association. Thus the deed was made to recite as consideration for the purchase, $50 cash, $352.50 represented by Hay's note, and $1000 the face of the indebtedness due by Buster to the association. This deed was signed by Buster and accepted by Hay without being read by either. Prior to its execution the officers of the association had been consulted and had accepted Hay as a suitable substitute for Buster, and the proposed purchase was assented to by it, the association being fully advised of the purposes of the parties. Immediately upon the delivery of the deed Hay went to one F. S. Young, the authorized officer of the association, to complete the transaction. Thereupon he was advised that it would be necessary for him to indorse upon the Buster obligations his undertaking to pay them. This he did before reading them. He then inspected them in the presence of the officer and discovered for the first time that the two notes aggregated $1000, instead of $750. He demurred to this state of affairs, stating that he had been informed that the amount borrowed by Buster was only $750, and that this was to be credited with the amount paid by Buster, and unless this was true, he would withdraw from the trade. To this Young assented, explaining that the papers were written in that form, but that the real amount was only $750, less the credits mentioned, and that his indorsement of the

papers as they stood would save the trouble and expense to Hay of executing new contracts as between him and the association; that the monthly sums to be paid by him would be credited on the loan. This, though not made entirely clear to Hay, who was unfamiliar with the methods of loan associations, induced him to proceed with the matter. Whereupon Buster's pass book in which the monthly payments made by him were entered was transferred by Young to Hay, Buster's name being erased and Hay's substituted.

Thereafter Hay paid the monthly installments of $13.33⅓ without default until the —— day of October, 1898, when he received notice that the association had transferred its assets to the trust company, one of the plaintiffs in error, and that he would be expected to enter into a new and more definite contract with the new concern. Hay had an interview with a party representing the purchasing concern and learned that it claimed a balance due of $575, notwithstanding he had paid more than $750. He declined to settle on such terms, or to make a new contract, but offered to pay $150 in discharge of his debt. This was declined. Thereafter both he and Buster received notices that they must comply with the contract as construed by the trust company, whereupon this suit was brought.

At the date of the sale from Buster to Hay he, Buster, had paid, including stock dues, about $94. The $50 cash paid him by Hay was to reimburse him in part for this outlay. The sums thereafter paid by Hay amounted altogether to $680 .

It was shown that the withdrawal value of the stock was $72 per share. It was also shown that the purchasing concern had actual knowledge of the arrangement between Hay and the building association.

The date of the purchase by the trust company of all the assets of the building association was August 19, 1898, and the terms of the transfer disclose the fact that thereby the building association went out of business; that the nonborrowing members alone were fully protected, and that the association was no longer able to continue business and mature its stock so as to discharge its contracts with its borrowing members.

The charge of the court and the findings of the court made at the instance of the parties constitute a full finding of the facts disclosed upon the trial and are here adopted, it being unnecessary for the purposes of this opinion to set them out more fully.

The agreed substance of the pleadings are set out in the record, and it appears therefrom that the facts adduced were admissible under the issues made, and that no exceptions were urged either to the pleadings or admission of evidence.

The court's conclusions of fact and law were duly excepted to by each party. It is not deemed necessary to state the pleadings here, as their nature will be sufficiently disclosed in disposing of the questions presented.

Buster joined Hay in this suit because the notices issued by plaintiffs

in error indicated that they would hold him responsible jointly with Hay. At the trial plaintiffs in error released him from all liability, looking alone to Hay. Thereupon Buster abandoned his claims against the defendants.

The trial court held that the contract was usurious as to Buster, but that usury could not be pleaded by Hay. That by the sale of its assets to the trust company the association had no longer the power to comply with its contract, and Hay should not be held to his. That therefore the contracts should be rescinded, the association be credited with the amount actually loaned, with legal interest from the date of the loan, and Hay be credited with the sums paid in, with legal interest from the date of each payment, and judgment be rendered for the balance appearing to be due as a result of this calculation. On this view of the case judgment was rendered for plaintiffs in error for $49.50, but foreclosure of lien was refused and costs were adjudged against plaintiffs in error.

Plaintiffs in error contend that, conceding the contract to be usurious as to Buster, the court correctly held that Hay could not take advantage of the usurious feature of the contracts. That they were entitled to judgment and foreclosure for the full amount of the obligations, less the unearned premium of $115 and the value of the stock, $360. Under this contention they urge that the reason which appears to have controlled the trial court, viz., the sale of its assets by the association, does not authorize the holding that the defendants were thereby entitled to rescission.

We are of opinion that the court correctly held the plaintiff Hay bound by the contract actually made, and that he could not plead usury. Whatever was due by Buster to the association Hay assumed to pay as a part of the consideration of his purchase. Young's construction of the contract in his interview with Hay at the time of Hay's assumption of the debt merely bound the association to that construction, and estopped the association to enforce the premium against him. Flint v. Johnson, 9 Atl. Rep., 369; Williamson v. Loan Association, 32 S. E. Rep., 769; Pioneer Association v. Peck, 20 Texas Civ. App., 111; Association v. Kellar, 20 Texas Civ. App., 616.

In support of the proposition that usury can not be pleaded by the purchaser where the debt assumed is part of the purchase price, see Maloney v. Earhart, 81 Texas, 281; Johnston's Case, 2 Texas Civil Appeals, 598. See also Investment Co. v. Stone, 46 Southwestern Reporter, 67, in which the principle is recognized.

Whether the court properly held Hay entitled to a rescission under the facts will depend upon the result of the inquiries, (1) whether he is shown to have become a member of the association under his purchase from Buster; and (2) whether the sale of the company's assets placed it out of the power of the association to mature its stock in accordance with its original plan.

We are clear that the answer to the first inquiry should be in the affirmative. The character of the contract between Buster and the asso-

ciation was part of the inducement for Hay's purchase. The right to make small monthly payments and thereby ultimately discharge his debt was to him an inviting feature in view of his financial situation. His cash payment of $50 was made to reimburse Buster for what he had already paid on stock, and authorizes the conclusion that whatever interest Buster had in the pledged stock passed to Hay. The plaintiffs in error are in no position to question this conclusion, for not only was the association fully apprised of his purposes, but it assented to the arrangement, transferred the pass book to Hay, kept the stock account in his name, received stock dues from him for more than four years, and finally notified him, not Buster, to come up and make a new and more definite contract with the trust company, which had purchased its assets. This being true, he had the rights and privileges of a stockholder, and the mere fact that the stock was not transferred on the books of the company to his name would not affect the question. This latter was an omission of the association.

That the sale of the association assets terminated its power to comply with its part of the contracts with Hay, and destroyed the mutuality of the contract which was so necessary to its validity, seems to us equally clear. It appears to have been a voluntary act of the concern, made largely in the interest of the owners of its free shares. It is a fair inference from the facts that Hay did not assent to the sale. In truth he seems to have known nothing of it until he received notice to enter into a new and more definite contract with the trust company. It is not made to appear that the association was driven to this course by insolvency, nor is it shown that there are any losses in which Hay, as a stockholder, should be called upon to share in common with his fellow members. No such issue is made in the case. The plaintiffs below alleged the sale and its consequences, and we think the allegation has been fairly established.

For these reasons the case of Price v. Kendall, 14 Texas Civil Appeals, 26, is not applicable. In that case the contest arose between the borrower and the receiver of an insolvent loan association. The borrower contended for a credit equal to the withdrawal value of his stock as fixed by the by-laws when the association was a going concern. The point decided was that a borrower did not thereby cease to be a stockholder, and that as such he must share the losses of the concern.

The elementary working principle of loan associations is a system of perfect mutuality and equality (Endlich on Building and Loan Associations, section 122), and if the association has voluntarily committed an act favoring a certain class of its shareholders, destroying this mutuality and putting it beyond its power to fairly fulfill the part of the scheme upon which the borrowers have a right to rely, the borrower is entitled to rescission and an equitable adjustment of the account. Such an act can not be committed to the hurt of any of its members. Sumerall v. Trust Co., 50 S. W. Rep., 69; Forwood v. Eubanks, 50 S. W. Rep., 256; Endlich on Bldg. and Loan Assn., secs. 497, 498, 501.

The question remains, whether the adjustment made by the trial court is correct.

It seems that the trial court charged Hay with the sum actually loaned and 6 per cent interest, and credited him with all money paid in and legal interest from the date of each payment, giving judgment for the difference.

In Knuttson v. Loan Association, 69 Northwestern Reporter, 889, a like settlement was approved, except that the calculation was made on the principle of partial payments. This rule is also laid down in Endlich on Loan Associations, section 496. The action of the court in adjusting the matter according to principles of equity is sustained by authority, but as the adjustment should be made on the principle of partial payments, the judgment will be corrected to that extent. We are also of opinion that the rescission of the contract did not have the effect to extinguish the lien by which the debt was secured, and we think the court erred in not foreclosing the lien as prayed for. The judgment will also be reformed in that respect, and as so reformed will be affirmed. All question as to the right of this court to reform and render in this case is eliminated by an agreement of the parties that the appeal be disposed of as if there had been a trial by the court without a jury.

We have not deemed it necessary to discuss the assignments of error in detail, nor in terms to dispose of any of the cross-assignments. They are necessarily disposed of in the general discussion of the questions treated.

It being shown that at the time of the purchase by Hay there was due to the association $750, with three months' interest, less $94.60 paid by Buster, judgment is rendered in favor of plaintiffs in error for that sum and six per cent interest from the date of Hay's purchase, July 30, 1894, less all sums paid by Hay credited as partial payments.

Hay having prior to the institution of the suit offered to pay a greater sum than the balance actually due, it might be held that the costs were properly adjudged against plaintiffs in error. Under such circumstances it would not be necessary to prove formal tender of the actual money in order to entitle plaintiffs to their costs. Spann v. Stevens, 18 Texas, 556; Maloney v. Earhart, 81 Texas, 285.

But in this case the plaintiffs below did not continue their offer to do equity. On the contrary, the suit was brought on the theory that nothing was due. It was an effort to hold defendants to the technical letter of the law. In this plaintiffs failed, and having secured an equitable adjustment between themselves and defendants, they continue to complain under cross-assignments for a judgment over against defendants. Under these facts the liberal rule declared in the cases last mentioned can not apply.

The costs both in the court below and on this appeal are therefore adjudged against defendants in error.

*Reformed and affirmed.*

Writ of error refused.