PEOPLE'S HOME TELEPHONE CO. v. CITY OF GAINESVILLE.

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 18, 1911.)

1. TELEGRAPHS AND TELEPHONES (§ 10*)—USE OF STREETS—LICENSE TAX—STATUTES.

Since Sayles' Ann. Civ. St. 1897, art. 698, providing that corporations created to operate telegraph lines are authorized to set poles along, on, and across any of the public roads or streets of the state, so as not to incommode the public, grants to telephone companies the right to construct their lines on city streets, subject to the city's right under article 702 to regulate the manner of such construction, and to require alterations in the lines after they are constructed, a provision in a telephone company's franchise granted by a city operating under the general laws of the state, requiring it to pay money for the permission to establish its lines in the streets of the city, was unenforceable for lack of consideration.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Dec. Dig. § 10.*]

2. TELEGRAPHS AND TELEPHONES (§ 10*)— FRANCHISES—LICENSE TAX — RIGHT TO OBJECT—ESTOPPEL.

Where an ordinance purported to grant to E. and his assigns a right to construct a telephone line in a city subject to an invalid provision for a two per cent. gross earnings tax, but the franchise was in fact granted to plaintiff corporation, and not to E., plaintiff was not estopped to dispute the validity of the tax under the rule that if one purchases property incumbered with a lien, and assumes the payment thereof, or if he buys subject to the lien, and

the amount of the debt is deducted from the price, he is estopped to dispute the validity of the debt.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Dec. Dig. § 10.*]

Appeal from Cooke County Court; C. R. Pearman, Judge.

Action by the City of Gainesville against the People's Home Telephone Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Potter, Culp & Culp, for appellant. J. T. Adams, for appellee.

DUNKLIN, J. The People's Home Telephone Company, a corporation, has appealed from a judgment rendered by the county court of Cooke county in favor of the city of Gainesville for $636.96 upon the following findings of fact and conclusions of law filed by the judge of the trial court:

"Findings of Fact.

"(1) That the city of Gainesville on the 4th of December, 1902, granted to one McElroy a franchise which authorized him, his associates or assigns, to establish and operate a telephone system in the city of Gainesvile. A true copy of this franchise is attached to plaintiff's petition, and marked 'Exhibit A.' The said franchise was duly assigned to the defendant.

"(2) That, by the terms of the eleventh section of said franchise, the city of Gainesville was authorized to receive and collect from the defendant company annually a sum of money equal to 2 per cent. of its gross income after it had been in operation two years, and I find that, by the terms of such provision, there was due the city of Gainesville up to the 15th day of January, 1910, $636.96.

"(3) I find that under said franchise the defendant company did establish and operate and is still operating in the city of Gainesville a telephone system.

"(4) I also find that at the date of granting the above franchise that the Southwestern Telephone Company had had for a number of years a telephone system in the said city of Gainesville. That about the time of granting the above franchise to the defendant it was discovered that the Southwestern Telephone Company had no franchise, or a very imperfect one, and thereafter, on the 3d day of August, 1903, the city of Gainesville granted to the said Southwestern Telephone Company an amended franchise.

"(5) I also find that by neither one of the franchises granted to or contracts made with the Southwestern Telephone Company was there any mention of a per cent. of the gross income or any other obligation for it to pay money to the city of Gainesville.

"(6) I find that both of said telephone companies occupy the streets of Gainesville, and to a large extent the same streets, and are conducting and operating a telephone business in substantially the same way and by practically the same means.

"(7) I also find that the requirements contained in the eleventh section of the franchise of the defendant company was exacted by the city of Gainesville as a compensation for the use of the streets by the defendant company, and as a means of raising revenue for the city, and not to cover any expenses of enforcing the law against or regulating said company.

"(8) I also find that the time of granting the franchise under which defendant is operating and up until after this suit was brought the city of Gainesville was incorporated under the general laws of the state of Texas relating to cities of less than 10,000 inhabitants.

"(9) I also find that, when McElroy and his associates accepted the franchise granted to them as aforesaid, they had learned that a new franchise was to be granted the Southwestern Telephone Company, and they were lead to believe from the expressions of some of the city council of Gainesville that the same conditions as to paying a certain per cent. of the gross earnings to the city would be exacted of that company that were contained in the eleventh section of the franchise granted to McElroy, and the defendant company did not know of the omission of such a provision from the new franchise granted the Southwestern until after the defendant had established its plant, including both underground and overground wires.

"Conclusions of law.

"I find that the provisions of the defendant's franchise contained in the eleventh section thereof are valid; that the city of Gainesville had the right and power to impose such conditions and burdens, and for that reason I give judgment for the plaintiff for the amount due it under the terms of said section."

Article 698, Sayles' Civ. St. 1897, reads: "Corporations created for the purpose of constructing and maintaining magnetic telegraph lines are authorized to set their poles, piers, abutments, wires and other fixtures, along, upon and across any of the public roads, streets and waters of this state, in such manner as not to incommode the public in the use of such road, streets and waters."

[1] In S. A. & A. P. Ry. v. S. W. Tel. & Tel. Co., 93 Tex. 313, 55 S. W. 117, 49 L. R. A. 459, 77 Am. St. Rep. 884, our Supreme Court held that telephone lines are "magnetic telegraph lines" within the meaning of that statute. In City of Texarkana v. S. W. Tel. & Tel. Co., 48 Tex. Civ. App. 16, 106 S. W. 915, this court held that by the

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

statute quoted the Legislature has granted to telephone companies the right to construct their lines upon streets of cities subject to the right given to cities by article 702 to regulate the manner of such construction, and the right to require alterations in the lines after they are constructed. It follows, therefore, that any contract made by an incorporated telephone company with a city or town operating under the general laws of the state to pay to it any sum of money for permission to establish its lines upon the streets of the city would be unenforceable for lack of sufficient consideration to support it.

The first and fifteenth sections of the ordinance are as follows:

"Section 1. That subject to the conditions and limitations herein expressed there is hereby granted to F. B. McElroy, his associates, successors and assigns permission to erect, operate and maintain lines of telephone including the necessary poles, underground conduits, cables, fixtures and electrical conductors upon and along, over and under all the streets, alleys and highways of the said city of Gainesville, Texas, as they now exist or as they may hereafter be extended under the following conditions and regulations, to wit."

"Sec. 15. The said grantee may incorporate under the laws of the state of Texas, for the purpose herein specified and assign the rights and privileges herein granted to the grantees herein, subject to the same conditions and restrictions herein imposed."

By section 16 McElroy was required to accept the ordinance within 60 days from its passage, and to give a bond acceptable to the mayor in the sum of $1,000, and that section concludes as follows: "The said bond shall become effective upon its approval by the mayor and its filing with the city secretary, and if the said F. B. McElroy, his successors and assigns, shall fail to file said bond conditioned as herein provided, within the time herein limited this ordinance shall forthwith become and shall thereafter be null and void and of no further force or effect."

In all other sections of the ordinance the same obligations imposed upon McElroy were also imposed upon his "associates, successors and assigns," the language quoted following the name of F. B. McElroy in each instance, and the plant to be constructed under the ordinance was termed the "Telephone System."

While in the first paragraph of the findings of fact quoted above the court found that the franchise was duly assigned to the defendant, yet the subsequent findings are in effect that the franchise was granted to the appellant, and appellee has not challenged the correctness of those findings. In the fourth paragraph occurs the following: "About the time of granting the above franchise to the defendant it was discovered." In the seventh paragraph occurs the following language: "I also find that the requirements contained in the eleventh section of the franchise of the defendant company was exacted by the city of Gainesville as a compensation for the use of the streets by the defendant company, and as a means of raising revenue for the city." The ninth paragraph begins with the following language: "I also find that when McElroy and his associates accepted the franchise granted to them." And in subsequent portions of that paragraph the franchise in question is referred to as "the franchise granted to McElroy and the defendant company." It is thus apparent from the ordinance and the findings of facts by the trial judge that the franchise was in fact granted to the appellant, and not to McElroy individually.

[2] We recognize the rule to be that if one purchases property incumbered with a lien, and expressly assumes the payment of the debt secured, or if he buys subject to the lien and the amount of the debt secured is deducted from the purchase price of the property, thus relieving him of the burden of paying that amount to the vendor, then he is estopped from disputing the validity of the debt. Michigan Savings & Loan Ass'n v. Attebery, 16 Tex. Civ. App. 222, 42 S. W. 569; North Tex. Sav. & Bldg. Ass'n v. Hay, 23 Tex. Civ. App. 98, 56 S. W. 580. If the franchise had been granted to McElroy only, and not to appellant, then his obligation to pay a consideration therefor would have been valid. If, thereafter, he had conveyed the franchise to appellant, and a part of the consideration for the conveyance had been the assumption by appellant of McElroy's obligation to the city of Gainesville, then, under the rule announced, appellant would be estopped from denying the validity of the obligation so assumed. But the record does not present such a showing, and hence the rule does not apply.

From the foregoing conclusions, it follows that the judgment must be reversed and the cause remanded, independent of the assignments of error contained in the appellant's brief, which we will not discuss.

Reversed and remanded.