F. E. PRICE, ADMINISTRATOR, v. W. C. KENDALL, RECEIVER.

Delivered June 4, 1896.

1. **Building and Loan Association—Insolvency—Adjustment With Borrowing Member.**
Where a contract between a building and loan association and a borrowing member provides that if the member desires to have his shares of stock redeemed in the repayment of his debt, they shall be taken at a cash valuation not less than the amount of dues paid thereon, with 5 per cent interest, such provision does not entitle the borrowing member, where the association has become insolvent, to have applied, in a suit brought to recover the debt by a receiver of the association, the amount of dues paid by him with interest, there being no payment or tender of the balance of the debt.

2. **Same—Rights and Liability of Borrowing Member.**
Upon the insolvency of a building and loan association, a borrowing member is not entitled to have the full amount of the dues paid in by him applied to the payment of his debt, but all losses that impair the value of the stock should be applied equally to every share, whether owned by borrowing or non-borrowing members.

APPEAL from Anderson. Tried below before Hon. J. R. BURNETT.

*Thos. B. Greenwood & Son*, for appellant.—The court erred in his conclusion of law herein that no greater credit should be allowed appellant upon the loans made to his intestate for payments made upon stock than the present actual cash value of such stock.   High on Receivers, secs. 201, 204, 205, 245, 318; 20 Am. & Eng. Ency. Law, 239 and authorities cited; Farrell v. Palestine Loan Association, 30 S. W. Rep., 814; Loan Association v. Biering, 25 S. W. Rep., 622; Sweeny v. Loan Association, 26 S. W. Rep., 290; Hensel v. Loan Association, 85 Texas, 215; Loan Association v. Abbott, 85 Texas, 220; Loan Association v. Braden, 32 S. W. Rep., 704; Buist v. Bryan, 21 S. E. Rep., 537; Endlich on Building Associations, sec. 496; Goggan v. Kelley, 25 S. W. Rep., 1133; Jackson v. Cassidy, 68 Texas, 282-290; Randall v. Protective Union (Neb.), 60 N. W. Rep., 1019; Windsor v. Bandel, 40 Md., 172; Building Association v. Jaecksh, 51 Md., 198.

*McMeans & Gill*, for defendants in error.—1.   A stockholder in a loan association, such as the one in question, who pledges his stock as security for a loan from such association, does not thereby cease to be a stockholder in, and a member thereof, but continues to share in the profits and losses of the concern.   Blakely v. Loan Association (Tex.), 26 S. W. Rep., 292, and authorities there cited; McGrath v. Loan Association, 44 Pa. St., 383; Pattison v. Albany Loan Association, 63 Ga., 373; 2 Am. & Eng. Ency. Law, 623, and note; Everman v. Schmidt, 41 N. E. Rep. (O.), 139; Strohen v. Franklin Saving Fund and Loan Association, 8 Atl. Rep., 843; Robertson v. Homestead Association, 69 Am. Dec., 154, note 3; 61 Federal Reporter, 446.

2.   The borrower cannot claim the right to have his shares credited upon his loan until he makes such demand upon the officers of the association accompanied by the balance appearing to be due.   See authorities before cited, and Rogers v. Hargo (Tenn.), 20 S. W. Rep., 430.

GARRETT, CHIEF JUSTICE.—This action was brought by the appellee as receiver of the Palestine Loan Association to recover of the appellant upon certain obligations executed by his intestate, C. F. Sawyers, as a borrowing member of the association.

The material facts shown upon the trial below are as follows:

1.   The Palestine Loan Association was an association duly incorporated under the laws of the State of Texas.   C. F. Sawyers, who was a stockholder and borrowing member in said association, died on the — day of July, 1893, and the appellant is the administrator of his estate.

2.   On September 4, 1889, Sawyers borrowed of the association the sum of $596, and entered into a written contract with it whereby he agreed to pay the association the sum of $800, of which $596 was to bear interest at the rate of 12 per cent per annum, upon the following conditions:

(1)   That the interest payments were to continue monthly until the

stock of the association became of the par value of $200 per share, under the by-laws, or until the loan should be otherwise discharged.

(2) That shares of stock numbered 832, 833, 834 and 835 had been transferred to the association as collateral security for the loan, and that all dues upon said shares, payable under the by-laws, should be paid until the shares reached the par value of $200 each.

(3) That the association held a vendor's lien, a mechanic's lien, and a deed of trust upon part of block 42, in DeBard's Addition to the city of Palestine, to secure compliance with the contract, and that the borrower should pay all taxes on said parcel of land, and keep the improvements insured.

(4) That all moneys paid by Sawyers into the association should be appropriated as follows: 1st, to taxes; 2nd, to insurance; 3rd, to fines; 4th, to all expenses and losses sustained upon said four shares of stock; 5th, to interest; and 6th, to dues.

(5) That if Sawyers should pay all interest upon the $596 as above stipulated, and pay the dues upon the four shares of stock as the same were payable under the by-laws, and pay all fines and other proper charges upon said shares until they matured, then the above obligation should become void.

(6) That upon failure to pay interest or dues for six months, the principal sum of $800, and all interest due on the $596, should at once become payable.

(7) That said Sawyers might at any time return his debt by paying the principal sum due with interest to the date of repayment, and in the event of repayment, the stock should be released; and if he should desire to have his stock redeemed by the association in repayment of his debt, it should be taken by the association at the cash cancellation value thereof as determined by the association.

(8) That if Sawyers' debt was not paid until the maturity of his four shares of stock, then his obligation above set out should be a full setoff against said four shares.

(9) That Sawyers should pay 10 per cent attorneys' fees, if the contracts were enforced by legal proceedings.

3. The loan association held as collateral to the contract above set out the note of C. F. Sawyers for $750, given for the purchase money of part of block 42 in DeBard's Addition to Palestine.

4. Upon said contract, of date September 4, 1889, there has been paid $307.90 interest, and $288 dues, in installments of $4 per month from July, 1888, to June, 1894, inclusive.

5. Upon December 30, 1890, C. F. Sawyers and wife borrowed of the Palestine Loan Association the sum of $1730, and entered into a written contract with the association, whereby they obligated themselves to pay to the association the sum of two thousand dollars, of which $1730 was to bear 12 per cent per annum interest. This obligation is conditioned exactly as that of C. F. Sawyers, of date September 4, 1889,

above set out, except as to amounts and security.   Ten shares of stock were transferred as collateral to secure this second contract.

6.   The loan association held as collateral to this second contract two mechanic's liens upon part of block 42 in DeBard's addition to Palestine.

7.   Upon said contract of date December 30, 1890, there has been paid $638.80 interest, and $720 dues, in installments of $10 per month from July, 1888, to June, 1894, inclusive.

8.   The payments made by appellant and his intestate were receipted for by entries in receipt books furnished by the association, which were ruled into columns, one column being for dues, another for interest, and another for fines and assessments, and all payments pleaded by appellant as payments of interest were entered in the interest columns, and all payments pleaded as payments of dues were entered in the dues columns.

9.   When appellant's intestate joined the Palestine Loan Association and purchased his stock, and at the dates of the contracts sued upon, the association was operating under a by-law which provided that non-borrowing members desiring to cancel and withdraw, or borrowing members desiring to pay up their loans, using pledged stock as part payment, should receive for their stock a cancellation price fixed by the board of directors, but which should not be less than the amount of dues paid in on each share and five per cent per annum interest, and this amount was fixed by the board of directors, as the cancellation price of the stock of the association.

10.   Through the defalcation of its secretary and treasurer and losses by the loss of interest on its loans upon adverse decisions of the courts holding them usurious, in December, 1893, the association became insolvent, with no hope of maturing the stock and attaining the ends of the corporation.   Then the directors ceased making loans and undertook to wind up the affairs of the concern, but the borrowers claimed usury and the original cancellation value of their stock, and the non-borrowers also claimed the same cancellation value; and, upon August 20, 1895, the affairs and assets of the association were placed in the hands of appellee as receiver.

11.   Appellant's intestate and appellant continued to pay interest and dues to the association up to June, 1894, but have made no payments since that time.

12.   The present actual value of each share of stock in the Palestine Loan Association is $34, as estimated by alloting to each outstanding share, whether pledged or unpledged, its distributive portion of the net assets of the concern.

The court below held the contract usurious and allowed the appellant credit upon the principal for all interest paid upon the loan, but refused to allow credit for the cancellation price of the stock as fixed by the directors in repayment of a loan, which was all dues paid upon the stock with five per cent interest per annum, and instead thereof heard

evidence as to the present actual value and allowed credit for that amount.

*Opinion.*—Appellant's contention is that Sawyers' contracts should have been credited with all the dues paid by Sawyers, together with five per cent per annum, interest thereon, in addition to the usurious interest paid by him, because the contracts stipulated that if he desired to have his shares of stock redeemed in the repayment of his debt, they were to be taken by the association at the cash cancellation value fixed by the by-laws, and at the time the contracts were entered into and when the association became insolvent, there was a by-law which required the association to receive for their stock from borrowing members desiring to pay up their loans a cancellation price fixed by the board of directors, which should not be less than the amount of dues paid in on each share, and five per cent per annum interest thereon, which amount had then been fixed as the cancellation price. But, as will appear from an examination of the clause of the contract referred to and by the by-law, it was only in case that the borrower desired to pay up the loan that he was entitled to have his stock redeemed. His stock could be cancelled only in repayment of his debt. By the plan of organization, whenever the stock of the association became worth $200 by reason of the payment of dues and the accumulation of profits, it matured, and investing members received the par value of their shares, while the obligations of borrowing members were delivered up and all shares were canceled. But the clause in the contract only provided that the stock of the borrower might be redeemed at its cancellation price in the repayment of his debt, and not as a partial payment thereon. It was necessary that at the same time the balance of the debt should have been paid or tendered in order that the borrower might avail himself of the cancellation price of his shares in making repayment. During his lifetime Sawyers kept up the payments of interest on his debt and of dues on his shares of stock, and after his death they were kept up by his representatives until June, 1894. No effort was ever made to have his shares redeemed in the repayment of his debt, and the appellant, in pleading the dues paid on the shares of stock as a credit upon the debt, does not tender the balance or offer to pay it. The right to the credit is not shown by the contract.

Should the payments of dues or assessments made upon the shares of stock be regarded as payments in extinguishment of the debt? Some time before payments of dues upon the shares belonging to Sawyers ceased, it was discovered that the stock of the association, by reason of losses, was not worth the amount of dues that had been paid thereon, and, in a sense, the association had become insolvent, since it was not able to redeem its shares at the cancellation price or by a return of all dues paid thereon. In winding up the affairs of the association, the non-borrowing shareholders must perforce accept a pro rata distribution of the assets of the corporation upon their shares, whether they are suf-

ficient to return all dues or not; and unless the dues of borrowing share-holders are to be treated as payments upon their obligations, there can be no reason why they should not share the losses of the association equally with the other shareholders. By the plan of the association the borrowing member receives the par value of his stock in advance and obligates himself to mature it by the payment of assessments, and when it becomes mature, if his obligation has not been sooner discharged, his stock is then cancelled and his obligation discharged; but the stock never becomes matured until it is worth par value. Thus it will be seen that there is a plain distinction between the stock and the debt. The language of Judge Henry, in the case of Building and Loan Association v. Abbott, 85 Texas, 224, regarding the payment of dues, although in discussion of the question of usury, is appropriate here: "Such payments are not for the use of borrowed money, but through them the share-holder acquires an interest in the property of the corporation. The shareholder is not necessarily also a borrower. If he is not one, he pays for his stock on the same terms that the borrowing stockholder does. There is no inconsistency in the double relation. If not also a borrower, the retiring stockholder withdraws the value of his stock. If he is also a borrower, he uses it to pay his debt with."

There is no reason why the borrowing stockholder should be placed in any better attitude than those who are not, when the association has failed to carry out its undertaking and ceased efforts to mature the stock. The default of the association is the default of all of the share-holders, whether they be borrowers or non-borrowers, and all losses that impair the value of the stock should be applied equally to every share. McGrath v. Loan Association, 44 Pa. St., 383; Stroker v. Franklin Saving Fund and Loan Association, 8 Atl. Rep., 843; Towle v. American Bldg., Loan & Investment Society, 61 Fed. Rep., 446; Rogers v. Hargo, 20 S. W. Rep., 430. There is authority for the opposite doctrine, but the weight of authority as well as of reason is with the cases above cited and others in line therewith. Authority contra: Buist v. Bryan, 21 S. E. Rep., 537; Endlich on Building Associations, sec. 496, and citations. In the case of Farrell v. Palestine Loan Association, 30 S. W. Rep., 814, the question was not raised. The affairs of the association being in the hands of a receiver for winding up, it may be questioned whether it was proper in this suit to hear evidence as to the value of the shares and credit the debt therewith, but no complaint is made of the judgment by the appellee.

In his fifth assignment of error appellant says: "The court erred in adjudging that appellee had a vendor's and mechanic's lien as set out in his petition on the real estate described in the court's judgment to secure the payment of $908.30, and in declaring said real estate subject to the payment of said sum." But he fails to point out in his statement that there was error in the respect complained of. We are only referred generally to the introductory statement of material facts.

The judgment of the court below will be affirmed.          *Affirmed.*