### DAN T. LEARY ET AL. V. PEOPLES BUILDING, LOAN, AND SAVINGS ASSOCIATION.

#### No. 805. Decided June 12, 1899.

**1. Building Association—Defaulting Borrower—Credit for Value of Stock.**

See contract between building association and borrowing stockholder, under which the former, electing to declare due and enforce the debt before maturity, for default in payment, was held to allow credit to the latter for actual value of stock subscribed and partly paid for by him. (Pp. 4-6.)

**2. Same—Usury—Contract.**

The right to such credit for actual value of stock, being secured to the debtor by the contract which the association sought to enforce, was not dependent upon a finding that the subscription for stock was a device for securing usurious interest. (P. 6.)

**3. Same—Question of Fact.**

The credit to be allowed being, not the amounts paid for the stock (as paid in evasion of the usury law), but its actual value, which was a controverted question not settled by the verdict, the Supreme Court could not render judgment, but must remand in order to have such value determined. (P. 6.)

ERROR to the Court of Civil Appeals for the Third District, in an appeal from Bowie County.

Leary brought suit against the association and the latter had judgment against him on its plea in intervention. He appealed and upon affirmance procured writ of error. The following is, in part, the opinion of the Court of Civil Appeals:

"KEY, J.—The court below seems to have treated the two sums of $185.77 each, found to have been paid as interest and premiums, as interest stipulated to be paid for the $1800 that was loaned, and the total of the two sums being in excess of the highest rate of interest permitted by statute in this State, the contract, to this extent, was treated as usurious, and the payments referred to were applied to the principal debt. The appellants are not satisfied with only this reduction, but contend that there is another element of usury in the contract and that the $480 found by the jury to have been paid on stock in the association should

Vol. LXXXXIII. Supreme—1

be applied as a credit on the principal debt. This contention is based upon the answer given by the jury to the tenth special issue submitted, to the effect that Dan T. Leary purchased the shares of stock of defendant simply to secure a loan.

"On the face of the contracts which purport to fix the rights of the parties, Dan T. Leary occupied a dual relation of stockholder in and borrower from the association. A person can be a stockholder in a building and loan association, and can also be a borrower from such association, and if the relation of stockholder is created in good faith and not as a subterfuge to avoid the law against usury, the question of usury is to be determined without reference to the fact that the borrower is also a stockholder. On the other hand, although the face of the papers may show the person to be a stockholder, as well as a borrower, yet, if it be made to appear that by agreement between the association and the borrower the stock was subscribed for and issued merely as a device to disguise an agreement to pay usurious interest, then the money paid ostensibly in payment for stock will be applied as a payment on the principal debt.

"It will be noted, however, that this question was not submitted to the jury and no finding was made thereon. The response by the jury to the tenth question, which was relied on by appellant, does not go far enough to show that this part of the contract was usurious. The finding is somewhat ambiguous, but it is susceptible of the construction that, while Leary as a matter of fact and in good faith purchased shares of stock in the association, he did not do so expecting to realize a profit from the investment, but made the purchase in order to render him eligible as a borrower from the association; and, though this may have been his object and purpose, the purchase of stock in the association should not be construed as a contract to pay illegal interest. Association v. Lane, 81 Texas, 369; Association v. Logan, 33 S. W. Rep., 1088. And, certainly, the finding referred to does not show that there was an agreement or understanding between Leary and the association that he was not in fact to become a stockholder, and no matter what may have been his purpose in entering into the contract, if that purpose was different from what appears on the face of the paper, and was not known to and participated in by the association, then the parties are bound by the face of the written instruments. The burden rested upon appellants to show such an agreement or understanding between Leary and the association as would authorize the conclusion that the stipulation in the contract for the purchase of stock was a mere device to cover up an unlawful contract for interest; and, as the jury have not found that such was the purpose of the contract, and that fact was not proved by uncontroverted testimony, we must decline to reverse the judgment.

"On the question referred to there was evidence which would sustain a finding that the contract for the purchase of stock in the association was made in good faith and not as a subterfuge to avoid the statute against usury; and, such being the case, under article 1331 of the Re-

vised Statutes as amended by the called session of the Twenty-fifth Leg-islature (see General Laws Twenty-fifth Legislature, page 15), the case must be disposed of in this court just as if there was such finding."

*Hudgins & Estes, R. W. Rogers, Todd & Glass,* and *Dan T. Leary,* for plaintiff in error.—If appellant Dan T. Leary applied to the defendant for a loan, and was notified by it or its agent that it would be necessary for him to subscribe for stock in order' to secure a loan from said asso-ciation, and said Leary subscribed for said stock at the time the loan was made, and solely for the purpose of securing said loan and not as an investment, and said contract is usurious, all payments made afterward to the defendant, whether as interest, dues, or on stock, should be credited on the amount received from said Leary by the association. As-sociation v. Rising, 34 S. W. Rep., 147; Investment Co. v. Stone, 46 S. W. Rep., 69; Loan Co. v. Mattress Co., 82 Md., 506; Barker v. Bigelow, 15 Gray (Mass.), 130; Hoskins v. Association, 84 N. C., 838; Overby v. Association, 81 N. C., 56; Eversmann v. Schmitt, 53 Ohio St., 174; Trust Co. v. Lepore, 17 Pa. Co. and Ct. Rep., 426; Association v. Ash-worth, 91 Va., 706; Strauss v. Building Assn., 117 N. C., 308; Beach, Mod. Law of Con., sec. 1219; Randall v. Building Union, 43 Neb., 876; Rowland v. Association, 115 N. C., 825.

As the contract between Dan T. Leary and said association was usuri-ous, there was only due said association, after entering all the payments made it by Dan T. Leary, the sum of $908.75; and if this amount was tendered to it by said Leary, and said association declined and refused to accept and receive said sum in payment and settlement of the amount due it by Dan T. Leary, its mortgage lien on the property described in plaintiff's petition and in the defendant's cross-bill would be released. McClung v. Trust Co., 38 S. W. Rep., 578; Kortright v. Cady, 21 N. Y., 343; Potts v. Plaisted, 30 Mich., 149; Bailey v. Metcalf, 6 N. H., 156; Salinas v. Ellis, 26 S. C., 337; Railway v. Soutter, 2 Wall., 510; Thorn-ton v. Bank, 71 Mo., 221; State v. Ross, 31 S. W. Rep., 600; Wolz v. Parker, 35 S. W. Rep., 1149; Buist v. Bryan (S. C.), 21 S. E. Rep., 537.

If appellant Dan T. Leary subscribed for shares of stock in the de-fendant company solely for the purpose of securing a loan from said association, and not for the purpose of an investment, and said contract is usurious, then all of the payments made by appellant to defendant should be credited on the loan from said association to appellant Dan. T. Leary. Association v. Rising, 34 S. W. Rep., 147; Investment Co. v. Stone, 46 S. W. Rep., 69; Overby v. Association, 81 N. C., 56; Hoskins v. Association, 84 N. C., 838; Association v. McKnight, 35 Pa. St., 470; Association v. Timmins, 3 Phila., 209; Association v. Association, 46 Pa. St., 493; Wadlinger v. Association, 153 Pa. St., 622; Buist v. Bryan (S. C.), 21 S. E. Rep., 537; Am. and Eng. Enc. of Law, 2 ed., 1058.

*Smelser & Mahaffey,* for defendant in error.—The evidence presents the ordinary case of the separate relation as stockholder and borrower

in such association. That he wanted the loan and took the stock in order to get the loan would make no difference in the fact that he became a stockholder and assumed the obligations as such. Association v. Lane, 81 Texas, 369; Association v. Abbott, 85 Texas, 221; Association v. Griffin, 90 Texas, 480; Sweeney v. Loan Co., 26 S. W. Rep., 290; Blakeley v. Loan Co., 26 S. W. Rep., 292; Association v. Logan, 33 S. W. Rep., 1090; Price v. Kendall, 36 S. W. Rep., 810; Loan Co. v. Everheart, 44 S. W. Rep., 885; Setliff v. Association (Tenn.), 39 S. W. Rep., 546; Association v. Trust Co., 15 So. Rep., 126; McCauley v. Association, 37 S. W. Rep., 212; Post v. Association, 37 S. W. Rep., 216.

*A. C. Allen, Edgar Watkins,* and *Frank C. Jones* also filed brief, by permission, on behalf of defendant in error, upon the question of usury, in the interest of clients in other pending suits involving the same issue.

BROWN, Associate Justice.—Daniel T. Leary borrowed from the loan association $1800, for which he executed his bond, joined by his wife, for $4000, dated February 26, 1894, payable to the said association, and subscribed for twenty shares of stock in that corporation of the face value of $100 per share.

The bond recited that Leary, as a member and stockholder of the association, had received from it, under the articles of incorporation, an advance of $100 per share on the value of twenty shares of stock in anticipation of their par value at the time when they should mature, stating the terms as follows: "Now the condition of this obligation is such that if the said above bounded Daniel T. Leary, his heirs, executors, administrators, or assigns shall well and truly pay or cause to be paid unto the said Peoples Building, Loan, and Saving Association or its certain attorney, successors, or assigns, the just and full sum of $2000 on or before the maturity of the said shares, payable in the manner following, that is to say, twenty dollars and no cents monthly as an installment on the said shares of stock, and eight dollars and thirty-three cents interest, and eight dollars and thirty-three cents premium on said advance of $2000 each and every month from the date thereof for such term as will secure the said Peoples Building, Loan, and Saving Association the payment of the full sum of $100 on each and every one of the said twenty shares hereby secured to be paid, * * * this obligation shall be void." The contract stipulated that payments should commence on a certain date and be paid monthly on the last Saturday of each month. Leary bound himself to pay the taxes on the property and to insure the buildings thereon upon which the deed of trust was given to secure the payment of the money borrowed, and it was expressed that in case Leary should be in default of payment of any of the sums mentioned in the bond for a period of three months, "the whole principal sum hereby secured to be paid, together with interest and premium hereon, shall become due and payable immediately thereafter, although the period above limited for payment thereof may not have expired, any-

thing therein contained to the contrary notwithstanding." It also provided for reasonable attorney's fee in case suit was brought to enforce its collection. The twenty shares of stock subscribed for by Leary were never delivered to him, but he, at the same time, transferred them to the loan company as collateral to secure the loan.

Leary and wife executed and delivered to E. A. Walton, treasurer of the association, as trustee, a deed of trust upon certain lots in the city of Texarkana, Texas, to secure the sum advanced. The deed of trust contained the same provisions as those copied above from the contract, and it was agreed that in case Leary should be in default of payment of any of the sums named for the period of three months, the trustee should be empowered to sell the property, under the terms specified therein, and that the proceeds of such sale should be applied as follows: (1) to the payment of the costs and expenses of executing the trust; (2) to the payment to the association of $100 per share for each of the shares of stock, all unpaid interest and premiums accrued thereon, and all moneys that Leary might owe the association on the shares of stock; all taxes and assessments and any sum of money that the association might have paid for Leary on account of his failure to keep the buildings insured, less "the actual value of said shares of stock at the time of sale."

Leary paid up all dues and assessments against him, and on the 1st day of February, 1896, wrote a letter to the officers of the association, in which he expressed a desire to withdraw from it. In that letter, he used the following language: "I want to pay so much cash and have you take my stock and cancel the mortgage on my property. In other words, what will you accept in cash as a complete settlement now between us? I subscribed for the stock and borrowed the money with the full understanding that the amount I paid each month would pay me out at the end of five years." To this letter the association replied, offering to allow him a deduction of $343.75 as the value of his stock. No objection was made to his withdrawing stock, but the controversy was over the sum to be allowed as a credit for the payments made on the stock.

There was no proof of the value of the stock made by either party, except that Leary had paid in $480 as installments on the stock, $30 for expense fund, and $10, fee for examination of title, and the association proved by one of its officers that it was a solvent concern and had a surplus of $201,000, but that the board of directors in 1895 had declared that the stock was worth 23 per cent less than par, but there was no proof that they had taken any action upon the application of Leary in deciding what value should be placed upon his stock.

Leary tendered to the agent and attorney of the association at Texarkana $908.75 in full settlement of the debt. If, however, he is allowed $480, the tender was not sufficient. He had paid as interest and premium upon the debt the sum of $371.54, and the contract being usurious, it is not denied that he was entitled to a credit for that sum. The contest is upon his right to be credited with the value of his stock in the association.

In September, 1896, the association proceeded under the deed of trust to sell the property for the payment of the debt. Leary sued out a writ of injunction to prevent the sale, and the association pleaded in reconvention upon its bond and asked for a foreclosure of its lien upon the lots. Upon a trial before the court, the contract was held to be usurious; Leary was allowed a deduction of $200, reserved in the making of the loan, and $371.54 on account of interest and premiums paid, and judgment entered for $1428.46, foreclosing the lien of the deed of trust, denying to him a credit for amount paid on stock. The Court of Civil Appeals for the Third Supreme Judicial District affirmed the judgment of the District Court.

The shares of stock subscribed for by Leary not having matured when the plea of reconvention was filed, the building and loan association was not entitled to enforce the collection of the whole amount of the debt, except by the terms of the deed of trust, by which Leary's failure for three months to make payment of installments upon the stock, interest and premiums and other charges which might accrue against him, under the by-law matured the whole debt, and the trustee was empowered to sell the land, paying to the association out of the proceeds its debt and other charges, less the actual value of the stock at the time of the sale. The association could not avail itself of the terms that matured the debt and enforce its collection without giving credit for the actual value of the stock. Building Assn. v. Griffin, 90 Texas, 486; Bringhurst v. Building Assn., 47 S. W. Rep., 831. Leary's right to have the value of the stock credited upon the debt did not depend upon the intent to evade the usury laws of the State, but rested upon the contract itself.

It was admitted that Leary paid on the stock the sum of $480, but he was entitled to profits and liable to deductions for losses, and the stock might have been worth more or less than that sum at the time the land was to be sold; the amount paid was evidence of the value of the shares, and, if there had been no other proof of value, would be sufficient to establish the fact that the stock was worth the amount of the payments made upon it, but it was proved by the defendant below, without objection, that in 1895 the directors of the building association had determined that the stock was worth 23 per cent less than its face value. That evidence is sufficient to make an issue of fact as to the value of the stock at the time the building association sought to make sale of it, which issue was not decided by the trial court nor by the Court of Civil Appeals, and this court can not enter judgment upon a controverted issue of fact.

The District Court erred in denying to Leary a credit for the actual value of his stock, for which error the judgments of the District Court and of the Court of Civil Appeals are reversed and the cause is remanded.

*Reversed and remanded.*