JAMES H. PRESTON ET AL., RECEIVERS, *vs.* JOHN W. WOODLAND.

*Building Associations—Insolvency—When Dues May be Set off against Mortgage Debt.*

When a building association has become insolvent and is in process of liquidation, a member who owes it a mortgage debt may set off against the same, not only the premium and interest, but also the dues paid by him, although the covenant in the mortgage required the mortgagor to

Md.]                          Opinion of the Court.

make payments until the stock becomes matured, and of the value of
$100 per share.

In such case, the insolvency of the association has rendered the original
contract impossible of performance, and when the total payments made
by the mortgagor as interest, premium and dues amount to the mort-
gage debt with interest at six per cent, he is entitled to have the mort-
gage released.

*Decided December 20th, 1906.*

Appeal from the Circuit Court of Baltimore City (STOCK-
BRIDGE, J.)

The cause was argued before McSHERRY, C. J., BRISCOE,
BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*S. S. Field* and *Enoch Harlan*, for the appellant.

*Alex. H. Robertson*, for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

There is but one question raised by this appeal. It is
whether, when a building association has become insolvent
and is in process of liquidation, one of its members who owes
it a mortgage debt may set off against the debt not only the
premium and interest but also the dues theretofore paid by
him under the mortgage.

No controversy exists as to the facts of the case, of which
an agreed statement appears in the record. The facts material
to the question brought up by the appeal are as follows :

The Colonial Savings and Investment Association of Balti-
more City was incorporated on April 19th, 1897, under the
provisions of Art. 23, sec. 18, clause 5 of the Code relating to
Building or Homestead Associations. It continued in opera-
tion until December 28th, 1905 when it was judicially declared
insolvent and placed in the hands of the appellants as receivers
for liquidation by a decree of the Circuit Court of Baltimore
City. It had an authorized capital stock of two hundred and
fifty thousand shares of the par value of one hundred dollars
each.

According to the general scheme of the association as dis-closed by the record, subscribers to its stock had the option of paying for it in cash at its face value, or by the payment of specified monthly installments, called "dues" until its maturity *i. e.* until the assets of the association made the stock worth one hundred dollars per share. The holders of full paid shares were subject to no further assessments and received dividends at the fixed rate of eight per cent per annum. The holders of installment shares received no dividends but their stock was to be credited with a proper share of the earnings of the association.

Each stockholder was entitled to borrow upon mortgage or other satisfactory security from the association, when it had funds on hand, one hundred dollars on each share of his stock. On such loans the borrowing stock holder was required to pay, in monthly installments, interest at the rate of six per cent per annum and a premium at the same rate. If the bor-rowers stock was installment stock he was required in addition to pay the monthly dues on it. Every member was entitled to one vote at meetings of the association for each share of stock held by him, except that no member who was indebted to the association could vote upon any question affecting its claim against him.

On April 30th, 1898, Harry E. Forwood, being the owner of eighteen installment shares in the association, received a loan thereon from it of $1800, which he secured by a mort-gage on a house and lot on Druid Hill avenue. He continued to pay the interest, premium and dues called for by the mort-gage until July, 1900, when the appellee John W. Woodland acquired title to the house and lot subject to the mortgage, the payment of which he agreed to assume. Woodland thereafter paid the sums called for by the mortgage until Nov-ember, 1904, after which he refused to make further payments. It does not appear from the record that the eighteen shares of stock in the association were ever assigned to Woodland, and the account of the mortgage debt on its books seem to have always been kept in the name of Forwood.

After the receivers for the association had been appointed and the Forwood mortgage had come to their hands, Woodland filed a petition in the receivership case in the Circuit Court averring that the whole of the mortgage debt had been fully paid and satisfied and he was entitled to have the mortgage released and praying for an order requiring the receivers to release it. The receivers answered the petition denying that the mortgage debt had been paid and asserting that a balance was still due thereon which should be paid in order to entitle the petitioner to the release of mortgage for which he prayed. The issue upon this petition and answer and the testimony taken thereunder having been heard the Circuit Court passed the order appealed from directing the receivers to execute and deliver to Woodland a release of the mortgage. It is admitted that the total payments made as interest, premium and dues amount to more than the mortgage debt with interest at six per cent and, if credit be allowed for all of them, the mortgage debt has been fully paid; but if a proportionate share of the losses sustained by the association be charged against the dues paid there will be a balance due upon the mortgage.

The counsel for the appellant receivers contended before us with skill and plausibility that inasmuch as the association was a mutual one each shareholder should be obliged to bear his share of its losses and the fact that a shareholder was also a borrower did not release him from this obligation ; and that therefore to allow credit for all payments made under the mortgage in question without any deduction for losses would operate as an unjust preference of the eighteen shares upon which the mortgage loan was made and would be, inequitable to the other stockholders. A number of decisions of both State and Federal Courts were cited which tended strongly to support the appellant's contention.

We do not further notice or discuss the authorities thus cited by the appellant because the question on which they bear was settled in this State by the cases of *Low St. Building Association* v. *Zucker*, 48 Md. 448, and *The Peters Building As-*

*sociation* v. *Jaecksch*, 51 Md. 198, in each of which the facts were quite similar to those now before us. Without repeating at length the reasoning of the opinions in those cases it is sufficient to say that they were based upon the ground that, the insolvency of the association having rendered impossible the performance on its part of the contract between it and the mortgagor the contract as originally contemplated between the parties was destroyed, and the liability of the mortgagor on his mortgage must be ascertained in the ordinary way. It was there held that the covenant of the mortgagor to pay his dues, interest and premium periodically until the maturity of the shares on which he received the loan, "must be taken to have been made in contemplation of the fact that the association should continue in active operation with a view to effectuating the objects and purposes of its organization until its accumulations should be sufficient to enable it to close its operations upon the basis of a solvent corporation according to the law under which it was created. Otherwise there might be no end to the payment of the weekly dues and the mortgagor would never be able to redeem his property." The association having by its insolvency rendered the performance of the contract impossible its right to demand the weekly payments ceased, and if the payments made up to that time by the mortgagor equalled its loan to him with legal interest he was entitled to a release of his mortgage. Zucker's case has been cited and followed in *Hampstead Bldg. Assn.* v. *King*, 58 Md. 280, and *Southern Building Assn.* v. *Price*, 88 Md. 165, and in other cases and its propositions may be regarded as the settled law of the State.

The covenant in the mortgage in the present case required the mortgagor to make the payments therein called for, "until the stock becomes fully matured and of the value of one hundred dollars per share." Under Zucker's mortgage the payments were to be made "until the time arrives when the said body corporate shall have sufficient funds on hand to pay the holders of every unredeemed share of its stock the sum of $100, *clear of all losses and liabilities.*" Under the Jæcksch mort-

gage the payments were to be made "until the time should arrive when the association should have sufficient funds on hand to pay the unredeemed shareholders the sum of $150 on each share held by them, *clear of all losses and liabilities.*"

These provisions of the three mortgages are essentially the same, the final clause "*clear of all losses and liabilities*" found in two of them having no effect upon the grounds on which the Court based its decision in Zucker's and Jæcksch's cases.

In Zucker's case this Court speaking through the late JUDGE ALVEY, said it could perceive no warrant for charging against each share of the mortgagor's stock a proportionate share of the losses of the association and further said of such proposed charge: "The covenant in the mortgage does not justify it in terms nor does it authorize the charge by any fair implication. The covenant is to pay the weekly dues and fines until such time as the association might have a sufficient fund to pay all of the holders of unredeemed shares of stock the sum of $100 per share clear of all losses and liabilities. This of course contemplated the continued existence and operation of the association and that it should terminate in the regular course and mode as provided in the articles of association. It was only in that event that the mortgagors could be required by the terms of this covenant to contribute to losses and liabilities of the association and then only by the prolonged or extended payment of the weekly dues. Losses by the association are chargeable by virtue of this covenant in no other way."

Applying the principles thus laid down to the present case it results that the Circuit Court correctly determined that the appellee Woodland was entitled under the circumstances of the present case to credit on the mortgage debt for all payments of interest, premiums and dues which had been made under the mortgage. We will therefore affirm the order appealed from.

*Order affirmed with costs.*