## FIDELITY BUILDING & LOAN ASS'N v. THOMPSON et ux.

No. 10628.

Court of Civil Appeals of Texas. Dallas.

Feb. 15, 1930.

Rehearing Denied March 8, 1930.

Paul T. Doss and M. B. Solomon, both of Dallas, for appellant.

Turner, Rodgers & Winn, of Dallas, for appellees.

JONES, C. J. This is an appeal from a judgment entered on the 22d day of May, 1928, in a district court of Dallas county in two suits pending in said court, which suits had been consolidated by an order of the court.

One of the suits was instituted by Fidelity Building & Loan Association against George W. Stell and wife, for recovery on a building and loan note executed by said Stell and wife to the loan association, and to foreclose a deed of trust lien on real estate given to secure the note. F. G. Kune intervened in this suit, alleging that he had theretofore subscribed for 20 shares of the par value of $100 in said loan association, that said shares

were fully paid up, and that there existed in his favor a credit on the books of the loan association in the sum of $2,000. Other allegations were made in this plea showing his right to intervene.

The second suit was filed by the Texas Building & Loan Association of Dallas against J. O. Thompson and wife to recover on a building and loan note executed by the Thompsons on April 16, 1928, in the sum of $4,000, and to foreclose a deed of trust lien given to secure the loan. The notes in each of the suits bore interest from date at the rate of 10 per cent. per annum, payable in monthly installments, and maturing when their shares of stock in the association were fully paid up, or if default of more than 30 days was made on installment payments. Mrs. Maggie McLendon and husband, Jeff D. McLendon, intervened in this suit, alleging that Mrs. McLendon had theretofore subscribed for 20 shares of stock, of the par value of $100, in said loan company, that said shares were fully paid up, and that there existed to her credit on the books of said loan company the sum of $2,000, and made further allegations showing her interest in the subject-matter of the suit and her right to intervene. J. Hugh Campbell also intervened in this suit, alleging that he had theretofore subscribed for 10 shares in said association, and had paid thereon at the time of filing this suit the sum of $20.06, and made other allegations showing his interest in the subject-matter and his right to intervene.

Appellant, Fidelity Building & Loan Association, will hereafter be styled Fidelity Company, and appellee Texas Building & Loan Association of Dallas will hereafter be styled Texas Company. The other appellees will be styled by their respective names.

On January 11, 1929, an attempted consolidation of these two companies was had, and the name of the Texas Company adopted as the name of the consolidated companies. About six months previous to this consolidation, the directors and officers of the Fidelity Company had resigned, and the officers and directors of the Texas Company were elected as directors and officers of the Fidelity Company. The management of the two companies was thereby vested in the same officers, but the two companies were operated as separate and distinct companies until after the consolidation, when they were operated as one company. Both the Texas Company and the Fidelity Company were incorporated as building and loan associations under the provisions of articles 852–881, Vernon's Ann. Tex. Stats. The Texas Company and the interveners in its suit challenged the validity of this consolidation. The Texas Company raised this issue in its pleading because of the fact that it had theretofore, but after the attempted consolidation, secured the opinion of the Attorney General, to the effect that the

attempted consolidation of the two companies was void. The two interveners in their respective petitions alleged the invalidity of the consolidation on the same theory that the Attorney General had pronounced the attempted consolidation void. The Fidelity Company, by supplemental pleading in the consolidated case, alleged the validity of the act of consolidating the two companies, stating its ground for so believing, and the interveners in the suit of the Fidelity Company also alleged the validity of the consolidation on practically the same grounds. Thompson and wife, defendants in the suit filed by the Texas Company, do not appear to have filed an answer, but did file assignments of error in the trial court. Stell and wife, defendants in the suit of the Fidelity Company, filed an answer consisting of a general demurrer and a general denial, a plea of virtual insolvency on the part of the Fidelity Company, alleging that its affairs were being directed by the commissioner of insurance of Texas, and that in justice and equity the suit should be held in abeyance until the Fidelity Company could be restored to a sound business condition.

The case was tried to the court, and judgment entered decreeing the invalidity of the attempted consolidation, and further decreeing that the two companies must be considered and treated as though no consolidation had been attempted, and restoring to the owners the shares of stock that had been originally issued by the respective companies. Judgment was rendered in favor of the Fidelity Company against Stell and wife for the sum of $5,000 as principal of the note, and for unpaid interest thereon in the sum of $239.-58. Judgment was rendered in favor of the Texas Company against J. O. Thompson and wife for $4,500, as principal of the note, and the sum of $362.22, as unpaid interest thereon. There was also rendered judgment foreclosing the deed of trust lien against the parties defendant in each of said suits. As against each defendant, the judgment decreed that it bear interest at the contract rate of 10 per cent. per annum from its date. The judgment further decreed that Stell and wife owned installment stock in the Fidelity Company in the sum of $708.22, and established it as a claim against the disbursements of the assets of the Fidelity Company to be paid when said company is liquidated, and denied the right of set-off against the indebtedness. The judgment also decreed that Thompson and wife owned installment stock in the Texas Company in the sum of $80, and established it as the same character of claim against the Texas Company, as was done in the Stell claim against the Fidelity Company. The judgment further decreed that intervener Kune owned fully paid-up stock in the Fidelity Company in the sum of $2,000, established same as a claim to be paid proportionately with other claimants when the Fidelity Company is liquidated. The judgment further es-

tablished the claim of J. Hugh Campbell as owner of $20.06 of stock in the Texas Company, and directs its proportionate payment when said company should be liquidated, and the same character of judgment was entered in reference to the claim of $2,000 by intervener Mrs. McLendon to be paid by the Fidelity Company in the same way when such company is liquidated.

The court filed conclusions of fact that are not excepted to by any of the parties, and must be treated as a statement of the material facts in this case; there being otherwise no statement of facts. These facts show that the Fidelity Company was insolvent at the time of the attempted consolidation on January 11, 1928, and had been insolvent for some time previous thereto, that the Texas Company was insolvent at the date of the trial, and that neither company is attempting to secure any new business. At the time of the attempted consolidation, the inference is that the Texas Company was solvent.

At the time of investment in its shares of stock, the Fidelity Company required the investor to sign a general proxy in the following language: "At all stockholders meetings of said association, at which I am not present in person, the then secretary of the association shall vote all of my shares of stock as my proxy, and he is hereby appointed as such." The proxy required to be signed by an investor in the Texas Company is as follows: "I hereby appoint the record owner of the largest number of shares of Class B certificates of the Texas Building & Loan Association of Dallas my attorney in fact and proxy, and authorize him to appear and vote all shares of stock held by me in said association at all shareholders meetings at which I am not present in person."

On January 1, 1928, a notice was mailed to every stockholder in each association of a stockholders meeting to be held on January 11, 1928, to consider the consolidation of the two associations. The meeting was held on such date by each company, and the stock in each company unanimously voted in favor of the consolidation, but practically all of the votes in each company were cast under and by virtue of the general proxies. Notice of the action of the stockholders, in consolidating the two associations, was given to each stockholder in a letter dated February 1, 1928, and since said date the two associations have been operated as one, under the name of Texas Building & Loan Association. The letter of notice of the meeting of January 11, 1928, contained statements showing that each company was in a solvent, if not even in a flourishing, condition. The inference is that the stockholders did not know of the insolvency of the Fidelity Company and the near insolvency of the Texas Company at that time. No protest appears to have been filed by any of the stockholders protesting the

authority of the proxy holders to cast the votes for such stockholders for the consolidation.

The borrowing members, who are defendants in this litigation, each executed a note providing for interest at the rate of 10 per cent. per annum payable monthly, a fixed sum for dues to mature stock payable monthly, and further provided that the note executed should mature when the shares of stock owned by such member should mature. The respective deeds of trust executed also contained this provision. The respective notes also each contained a provision that, if default in the payment of any installment of interest, or in payment of any dues or fines on shares, shall exist for 30 days after such installments or fines have become due, the legal holder of the note may declare the note due and payable.

Prior to the attempted consolidation on January 11, 1928, the Texas Company advanced to the Fidelity Company the sum of $80,040.56, in order that the Fidelity Company might meet matured obligations it had outstanding. This money was advanced after both companies were being operated by the same officers and directors. After the attempted consolidation had been perfected, the Texas Company advanced to the Fidelity Company the additional sum of $50,638.23, making said advances equal the sum of $130,678.79.

The judgment, supported by proper pleading, allowed the Texas Company a recovery against the Fidelity Company for the entire amount of these advances, with interest at the rate of 6 per cent. per annum.

The Fidelity Company has duly assigned error on the action of the court in decreeing that the attempted consolidation was void. It has also duly assigned error on the action of the court in decreeing judgment against it, and in favor of the Texas Company for the sum of said advances. The Texas Company is the only appellee that has filed a brief. It contends that the judgment is correct in respect to the complaints of the Fidelity Company, but questions the correctness of the judgment in reference to the borrowing members, who were defendants in the suits below, and also as to the intervening nonborrowing members, so as to bring under review the entire judgment. The issues to be determined, therefore, are: (1) The validity of the attempted consolidation of January 11, 1928; (2) the status of the borrowing and nonborrowing members of an insolvent building and loan association, and the rule to be observed in its liquidation. These issues will be discussed in the order named.

Was there a valid consolidation of the Fidelity Company and the Texas Company? It is statutory that "any two or more building and loan associations organized under the laws of this State may by two-thirds of the

vote of all shareholders of each of the different associations resolve to consolidate into one upon such terms as shall be mutually agreed upon by the directors of such associations. Any shareholder not consenting to such consolidation shall be entitled to receive the withdrawal value of his stock in settlement, or, if a borrower, to have such value applied in part settlement of his loan. Such consolidation shall not take effect until a copy of said resolution, certified by a majority of the board of directors of each association, shall be filed with the Secretary of State and with the Commissioner and recorded in the manner hereinbefore provided." Article 871, R. C. S. 1925. This article also provides that this consolidation may be had at an annual meeting or at any meeting called for such purpose.

The record is that, as to each company, the statutory requirement of a two-thirds vote in favor of consolidation before same can be effected was secured only by the votes of the holder of general proxies. If the holder of a general proxy, given at the time and under the circumstances these proxies were given, authorized the holder of such proxies to vote on this question, then this attempted consolidation is valid; on the other hand, if the proxy holder was not authorized by the general proxies thus given to vote on the attempted consolidation, then no such consolidation was effected.

■■ The authorities are uniform in holding that a general proxy executed at the time of the purchase of stock in a corporation is limited to the conduct of the ordinary business of the corporation. Shield v. Life Ins. Co. (Tex. Civ. App.) 202 S. W. 211, 213; Thompson on Corporations (3d Ed.) vol. 2, p. 352; Fletcher, Cyclopedia Corporations, vol. 3, p. 2834; Cook on Corporations (8th Ed.) § 610. This court, in Shield v. Insurance Co., supra, speaking through Chief Justice Rainey, declared that "a general proxy will not authorize the holder to vote for the sale and disposition of the entire assets of the corporation and for the abandonment of the business enterprise." Thompson on Corporations, supra, says: "An ordinary or general proxy is intended to be used in the corporate elections and does not authorize the proxy to vote either to dissolve the corporation, or to sell the entire corporate business and property." Fletcher, Cyclopedia Corporations, supra, says: "A proxy to vote in the ordinary concerns of the corporations—and proxies are to be thus construed unless their terms are special—is no authority to vote for the reorganization of the corporation, or for its consolidation with another corporation, or for a sale of all its property or for a voluntary liquidation of its affairs." These quotations are supported by numerous cited authorities.

Under these authorities, declaring the power of a general proxy holder, this court must hold that a general proxy only authorizes the holder to vote on the ordinary affairs of the corporation, such as the election of directors, etc., and does not authorize such holder to vote on the extraordinary matter of consolidating one company with another. The votes cast by the proxy holder in each of the companies for consolidation were unauthorized and void. It necessarily follows that, as the attempted exercise of the statutory right to consolidate these two companies was not in accord with the terms of the statute granting such right, the purported act of consolidation is void. It also follows, as a necessary corollary, that the Fidelity Company and the Texas Company continued to exist as separate corporations after January 11, 1928, and that the stockholders in each company retain their shares in the company issuing them. The judgment of the court in this respect must be affirmed.

■ In thus affirming this part of the judgment entered by the trial court, we have not overlooked the principle of law that places on the stockholders of a corporation the duty at once to repudiate the action of a proxy holder in exercising a power unauthorized by the proxy, otherwise such stockholder will be deemed to have ratified the vote, and that in this instance more than one year had elapsed before the vote of the proxy holder on consolidation was attempted to be repudiated. We do not believe that the doctrine of ratification because of silence applies in this case. Both the Fidelity Company and the Texas Company are creatures of the statutes of this state, and exercise only the powers granted, or necessarily implied, in the legislative enactment under which they were created. This enactment confers on these companies the privilege of consolidation with other like companies, provided such privilege is exercised in the manner the enactment prescribes. The manner in which consolidation may be effected is specifically described in article 871, above quoted, and is exclusive of any other method to accomplish a consolidation of two or more building and loan associations. If we allow the contention that, though the attempted consolidation, made in violation of the statutory requirement, subsequently may become a valid act because of the silence of the stockholders, then we legislate into the law a new and different method to consolidate two or more such companies. It would be the same principle to contend that a consolidation of two building and loan associations could be effected by a mere resolution of their respective boards of directors, provided stockholders did not at once repudiate such act. In its last analysis, the instant consolidation depends solely on the ultra vires act of the directors in declaring such consolidation.

■ The notice to the stockholders that the consolidation of the two companies would be

attempted on the given date did not inform the stockholders of either company that the Fidelity Company was then insolvent and indebted to the Texas Company in an amount exceeding $80,000, nor that the Texas Company was then bordering on insolvency, but, to the contrary, the notice contained statements presenting the opposite condition as to both companies. We hold therefore that, even if it is admitted that the doctrine of ratification is applicable to the instant case, no estoppel can be urged against the shareholders of either company, and especially those of the Texas Company.

At the time of the trial of this case, both the Fidelity Company and the Texas Company were insolvent. Under such a condition, what of the status of the stock issued to a borrowing member in respect to the status of the stock issued to a nonborrowing member? In other words, must the losses that inevitably attend the insolvency of a building and loan association rest proportionately upon the fully paid-up stock of the investing (nonborrowing) member and the partially paid-up stock of the borrowing member; or must it rest alone on the former? A nonborrowing member purchases stock in a building and loan association as an investment, and pays in cash the par value of the shares purchased. Ordinarily, he is guaranteed annual interest on such investment at a little less than the prevailing commercial rate, and, in addition, receives dividends on the earnings of the association. The association becomes indebted to such member in the amount of money that represents the par value of his stock. The borrowing member contracts to purchase stock in such an association for the primary purpose of borrowing money, but, in order to do so, must subscribe for shares of stock, the par value of which cannot be less than the amount of money he desires to borrow, and as security for such loan he is required to deposit with the company his shares of stock and to execute a deed of trust lien on real estate, two-thirds of the value of which must not be less than the amount of his loan. In the instant case, the borrower paid interest in monthly installments on the loan at the rate of 10 per cent. per annum. In addition to this monthly payment of interest, he was required to pay a certain sum as dues, which will fully pay out his stock after the expiration of a certain number of months. The note executed for the loan matures when and at the time his stock is fully paid out, the money thus paid in cancels the loan, and the shares become the property of the association, the indebtedness is canceled, and the borrowing member's connection with the association ceases. While the borrowing member has put up his stock as collateral security for his loan, nevertheless such stock stands in his name on the books of the association, and he is permitted to vote such stock in all stockholders' meetings, and hence the responsibility for the management or mismanagement of the affairs of the association rests alike on both classes of members.

As to the question under review, the courts of other jurisdictions in this country have promulgated three rules to which have been given the names, respectively, of "Pennsylvania Rule," "Maryland Rule," and the "Grosscup" or "Illinois Rule." These rules can only be said to agree on the one proposition that, if a building and loan association is prematurely dissolved because of insolvency, the indebtedness of the borrowing member at once matures. This rule is announced on the theory that the entire purpose of the association has failed, and the contractual obligations between it and its members are thereby dissolved, except for the purpose of liquidation. This universal rule will be adopted in the instant case. In the liquidation of such an association, the Pennsylvania rule charges the borrowing member with the amount actually received by him, with interest thereon, and gives him credit for the total amount paid as interest and premiums, as of the date paid, calculating the balance due on the partial payment plan. It considers the borrowing member, with reference to his payment of dues on his shares, as a stockholder without reference to his status as a borrower, and treats all such payments as assets of the corporation to be shared by the borrowing member pro rata with the stock of the nonborrowing member on final distribution of the assets. The Maryland rule proceeds on the theory that, while originally there was a dual relation between the borrower and the association, the insolvency destroyed the mutuality of the contract, and changed such relation to one of ordinary creditor and debtor, and hence charges the borrowing member with the sum borrowed by him, with interest thereon, and credits him with all sums paid as dues, interest, and premiums, according to the rule governing partial payments. The Grosscup rule is adopted in only a few jurisdictions, and will not be here discussed, other than to say it is closely related to the Pennsylvania rule, but perhaps a little more favorable to the borrowing members. Note and authorities cited therein in 50 A. L. R. 533 et seq; note and authorities cited in 4 Ann. Cas. 1080 et seq.; Preston v. Woodland, 104 Md. 642, 65 A. 336, 10 Ann. Cas. 391 et seq., and authorities therein cited; Groover v. Pacific Coast Sav. Society, 164 Cal. 67, 127 P. 495, Ann. Cas. 1914B, 1261, 43 L. R. A. (N. S.) 885, and authorities cited. These citations announce the three rules above stated, and give the authorities adopting each rule. The decided weight of authority is in favor of the Pennsylvania rule.

There is believed to be no decision in this state adopting either of the rules above stated

as the rule in this state for liquidating an insolvent building and loan association incorporated under the legislative enactment of 1913. Prior to this enactment, and under the method then employed by building and loan associations in transacting their business, there are decisions that apparently favor the Maryland rule. Loan Ass'n v. Hay, 23 Tex. Civ. App. 98, 56 S. W. 580; Park v. Kribs, 24 Tex. Civ. App. 650, 60 S. W. 905. A careful reading of these cases, however, does not disclose that any one of the three rules was adopted by the court. The opinion in the case of Price v. Kendall, 14 Tex. Civ. App. 26, 36 S. W. 810, is unquestionably written on the theory that the Pennsylvania rule lays down the proper procedure, but it cannot be said to have adopted such rule. In this connection also see Sweeney v. El Paso Bldg. & Loan Ass'n (Tex. Civ. App.) 26 S. W. 290; Blakeley v. El Paso Bldg. & Loan Ass'n (Tex. Civ. App.) 26 S. W. 292; Pioneer Building & Loan Co. v. Everheart, 18 Tex. Civ. App. 192, 44 S. W. 885. In Leary v. Loan Ass'n, 93 Tex. 1, 49 S. W. 632, 51 S. W. 836, our Supreme Court held that a borrowing member of a building and loan association was entitled to profits and liable to deductions for losses, and that the value of his stock determined the credit to which he was entitled on his indebtedness. The most that can be said for this decision, as to the question here discussed, is that, in reference to borrowing and nonborrowing members, the shares of stock owned by each must share proportionately in the profits and losses of the association. However, none of the decisions of this state can be said to lay down a rule to govern the procedure to be followed in the final liquidation of the affairs of an insolvent building and loan association. The legislative enactment of 1913 is silent on this subject. It may therefore be said that, prior to the legislative enactment of 1929, which became effective after this case was tried in the lower court, the law of this state had declared no policy in reference to the establishment of a rule for the liquidation of the affairs of an insolvent building and loan association.

Chapter 61 of the General Laws of the Second Called Session of the Forty-First Legislature, enacted in June, 1929, does declare the state's policy in reference thereto, and in specific terms prescribes a rule to be followed in the liquidation of an insolvent building of an insolvent building and loan association. This chapter re-enacts the building and loan laws of this state. Section 29 declares that: "All Texas building and loan associations, now or hereafter organized, and all foreign associations, now or hereafter organized to do business in Texas, shall continue their corporate existence and power and be subject to the provisions of this Act in like manner as corporations which are incorporated hereunder." It is the duty of this court to apply the law in existence at the time it renders its judgment, provided no vested right under a prior law is thereby impaired Louisiana Ry. & Nav. Co. v. State, and authorities therein cited (Tex. Civ. App.) 298 S. W. 462, 466.

If the act of 1913 had defined a procedure to be followed in reference to determining the respective rights of borrowing and nonborrowing members in case of insolvency, substantially different from the rule prescribed by the act of 1929, for instance, had adopted the procedure of the Maryland rule, then it could be said that a borrowing member had a vested right that is impaired by the 1929 act, and that such enactment, in so far as it attempted to take away from him such vested right, is unconstitutional. This for the reason that the existing law at the time of the making of a contract is impliedly written into such contract. We have seen, however, at the time these contracts were executed, there was neither statutory law nor the settled law of decision of the Supreme Court of this state prescribing any rule in respect to the matter now under review.

The fact that it is common knowledge, that there are a great many building and loan associations doing business in this state, that it is also common knowledge that the business undertakings of men frequently result in failures, and that building and loan associations can be no exception in this respect, authorizes the state, under its police power, to control by legislative enactment the manner in which insolvent building and loan associations may be liquidated, and to declare the status of the stock of both the borrowing and nonborrowing members in the liquidation of such associations. It follows as a presumption of law that the contracts of building and loan associations, chartered under the laws of 1913, were made in view of the right of the state to exercise its police power in respect to this matter. We therefore hold that section 29 of the act of 1929, making the provisions of chapter 61 apply to existing building and loan associations, is a valid exercise of the police power of this state, and that such provisions as are relevant to the matter under review must control the disposition of this appeal.

Section 40 of the 1929 act, among other provisions, declares that: "If any such association [building and loan association] is in process of voluntary liquidation, the shares of a borrowing member shall be entitled to full participation in the assets of such association, and their value as thus determined shall be applied upon the indebtedness of such member. If any such association is in process of involuntary liquidation, the minimum value of the shares owned by the borrowing member, which amount is to be applied by the receiver upon the indebtedness of the member, must be not less than the actual dues

payments made by such borrower upon his shares plus credited dividends less any lawful charges owing upon such shares." This statute purports to solve the problem we have under discussion. It is not entirely clear as to its meaning, and a construction of some of its language becomes necessary.

It is clear that, in both voluntary and involuntary liquidation, whatever a borrowing member is entitled to on his shares of stock must be credited on his indebtedness. This is made certain by the unmistakable language used in reference to both forms of liquidation. It necessarily follows that any foreclosure of the deed of trust lien executed by a borrowing member can only be had subject to such credit. The only inference that can be drawn from the language of this statute, in respect to voluntary liquidation, is that the stock of a borrowing member and the stock of a nonborrowing member occupy the same status and must share proportionately the losses because of the insolvency of the association. The statute gives to a borrowing member the right of "full participation in the assets of such association." Participation with whom? Necessarily with the stock of the nonborrowing member; that is, all owners of stock are to share in the assets on the same basis. The mutuality of the members, which is the foundation principle of building and loan associations, is not destroyed, if this construction is given to this provision of the statute.

What of the provision of this statute in respect to involuntary liquidation? Here the rule is more specific in its terms. The language of the rule is that "the minimum value of the shares owned by the borrowing member * * * must be not less than the actual dues payments made by such borrower upon his shares plus credited dividends less any lawful charges owing upon such shares." The meaning of this language is clear, except as to what is intended to be included in the phrase "lawful charges owing upon such shares." Is the meaning of this phrase to be restricted to unpaid interest, fines, and court costs, to the exclusion of a proportionate share of the losses? If so, then the statute not only prescribes a different rule to determine the value of the shares of a borrowing member in a case of involuntary liquidation to that prescribed in a case of voluntary liquidation, but also destroys the mutuality existing between the members, in that losses would be borne alone by the investing member. This we cannot believe was the intention of the Legislature, and will not be held to have been such intention, if any other reasonable construction can be placed on such language. In voluntary liquidation we have seen that under the terms of the statute the losses are to be borne proportionately by both classes of stockholders. If the phrase "lawful charges" is construed to include not only the items above enumerated, but also the borrowing member's proportionate share of the losses that have come to a building and loan association by reason of its insolvency, then the same rule is prescribed for each manner of liquidation, and no violence is done to the mutuality existing with the members. The amount to be credited on the indebtedness of a borrowing member in each instance would be determined in the same manner. We therefore construe "lawful charges" to include losses as well as unpaid interest and fines.

As further showing the intention of the Legislature in section 40 to preserve mutuality and make no distinction between the equity of the borrowing and nonborrowing members in the liquidation of an insolvent building and loan association, we quote the following from section 57: "Whenever the losses of any building and loan association, resulting from depreciation in value of its securities or otherwise, exceed its contingent reserve fund, undivided profits and current earnings, so that the estimated value of its assets is less than the total amount due its members, the Banking Commissioner of Texas upon petition of such building and loan association, may order a reduction of its liability to its members, except upon juvenile shares, in such manner as to distribute the loss equitably among such members."

As a borrowing member is necessarily included in the term "members of the association," it was clearly the intention of the Legislature that the amount of dues paid in, and whatever credit by way of dividends such member was entitled to, should be lessened in the same ratio as that of the payment made for his stock by the nonborrowing member. Section 57 therefore gives the shares of stock of the borrowing member the same status as that of the nonborrowing member in cases arising under its terms.

We therefore conclude that in the instant case, when the Fidelity Company and the Texas Company became insolvent, the contract entered into between each company and its members became impossible of performance on the date each company became insolvent; that the indebtedness of the borrowing member became at once due and payable; that the amount owing to the nonborrowing or investing member also became due and payable; that the amount of money paid in by way of dues and credited dividends to mature the stock of the borrowing members became due and payable; that the deeds of trust executed by the borrowing members to secure loans made to them became at once subject to foreclosure; that the indebtedness of a borrowing member is the sum received as a loan, plus any unpaid interest and fines, less the value of his shares, determined by the amount of dues paid by such member plus his credited dividends, less any lawful

charges, as the term "lawful charges" is herein construed; that the indebtedness thus determined shall bear interest at the legal rate until such sum is paid; and that the foreclosure of the deed of trust lien shall be for the balance of the indebtedness thus determined.

As section 40 of the act of 1929 is construed, it is in principle the Pennsylvania rule, differing from it, however, in one material matter. As will be seen by the authorities above cited, such rule requires a borrowing member at once to pay his indebtedness and the lien on the real estate security is foreclosed on the entire amount of this indebtedness without reference to what might be determined to be due the borrower on his shares after final liquidation. This, of course, proceeds on the theory that, in the main, the assets of the association consist of the indebtedness of the borrowing members and the liens securing such indebtedness. As it cannot be determined, in advance of final liquidation, what is the actual money value of these assets, there is no basis on which to determine the value of the shares until such final liquidation and the assets thereby have been changed into money. This in a measure is true; however, our building and loan statutes provide for an audit to include a revaluation of securities, from which it can be determined with reasonable certainty the percentage of the insolvency of a building and loan association. The Legislature must have intended that an estimated value of the assets in either a voluntary or involuntary liquidation of an insolvent building and loan association should be arrived at in this manner; otherwise it would have prescribed an unworkable, if not impossible, method of liquidation. We understand that such an audit has been made of both the Fidelity Company and the Texas Company, and that the Fidelity Company, at the time of the trial, was 50 per cent. insolvent, and the Texas Company 10 per cent. insolvent; this can be made the basis for valuing the shares of stock, both of borrowing and nonborrowing members in each company, and for fixing credit to be made on the indebtedness of the borrowing member.

In justice to the learned trial judge, it should be stated that the statute upon which this decision is based was not enacted at the time the case was tried, and that he evidently adopted the Pennsylvania rule in his adjudication of the rights of the borrowing and nonborrowing members, and correctly applied such rule, except as to the matter of interest after insolvency. Under such rule, the legal rate, and not the contract rate, then applies.

It follows that the judgment of the trial court will be affirmed in the decree that the attempted consolidation of January 11, 1928, was void, and as to the decree awarding judgment in favor of the Texas Company against the Fidelity Company, but in other respects the case will be reversed and remanded for a new trial, consistent with this opinion.

Affirmed in part; reversed and remanded in part.