**KELLEY et al. v. GARFIELD COUNTY BLDG. & LOAN ASS'N.**

No. 26713.   Dec. 15, 1936.

Rehearing Denied June 8, 1937.

T. R. Blaine, for plaintiffs in error.

Simons, McKnight, Simons, Mitchell & McKnight, for defendant in error.

PER CURIAM. This appeal involves the foreclosure of a real estate mortgage executed by the plaintiffs in error to the defendant in error; said appeal involves only the question of a judgment in personam rendered against plaintiffs in error, S. E. Kelley and Maude Kelley; judgment in rem and judgment affecting other defendants not brought up. Pleadings and proof show same to be the usual building and loan association form of note and mortgage. There was executed a $3,000 note secured by mortgage given by plaintiffs in error; also, as shown, plaintiffs in error subscribed to 30 shares of stock in defendant in error corporation; same was assigned as collateral security, said mortgage reciting, after reciting the realty covered, "also thirty shares of stock in said association, certificate No. B-171, which are also pledged, assigned and transferred as further security." That the mortgage is given as security and in consideration of a loan of $3,000, and for the purpose of securing the payment thereof and of the monthly sum of interest, monthly dues on stock, fines and other items hereinafter specified. Further. that said mortgagors, being the owner of 30 shares of stock of said Garfield County Building & Loan Association, and having borrowed of said association the money secured by this mortgage in pursuance of its by-laws, will do all things which the by-laws of said association require of shareholders and borrowers to do, and will pay to said association monthly dues on said stock and interest on said loan until said stock shall mature as provided by said by-laws. Also, the note recites they promise to pay the association the sum of $39 per month, the same being monthly dues and interest on 30 shares (certificate No. B-171) of the stock, which sum shall be payable every month until each of said shares shall reach the value of $100. The paragraphs are not numbered, but it is alleged also that one defendant, Grace B. Bell, specifically assumed and agreed to pay and has become liable for the amount due. The prayer asks for personal judgment against said Grace B. Bell and the original makers, S. E. Kelley and Maude Kelley. Said Kelleys filed answer and amended answer therein, setting up a plea of the limitation statute; also pleaded sale by them to said Grace B. Bell, her assumption, being the same person against whom plaintiff set up assumption of debt and asked personal judgment; further, as a plea of estoppel, they allege that for more than five years prior to the institution of action they had not paid nor authorized any other to pay for them any sum to said Garfield County Building & Loan Association, and if such were made, same were made without their knowledge or consent; that said plaintiff acquiesced and consented to the sale of the property; knew that the defendants Kelley had no further interest in said real property, and that the duty of payment thereafter rested on said subsequent owners. Further allege one Burgess had an unrecorded deed; that some inducement was offered Burgess by building and loan association to the effect if he would make certain repairs and pay a certain sum to the association, the terms of the contract would be altered by reducing monthly payment assessments; that this was done; that this created a further estoppel as to said answering defendants since such agreement was made with the knowledge, consent, and acquiescence of said association by concurring in the acts of its said secretary as pleaded, and by reason of all things pleaded, said defendants Kelley were fully and completely discharged from liability. Reply by way of general denial as to things alleged, except as set forth in petition, was filed. Jury was waived and cause submitted to the court. Judgment by default as to all defendants except these plaintiffs in error was taken, and the cause was tried as to its merits only between the parties here on this appeal. Judgment foreclosing the mortgage was rendered; also personal judgment against said Grace B. Bell and these plaintiffs in error was rendered. Bell does not appeal. No contest as to the judgment in rem is lodged. The sole question is the right of the association to have adjudged in its favor a personal judgment against plaintiffs in error. Upon opening statement. counsel for plaintiffs in error was permitted by the court to make a slight deviation from his written plea, stating that

while his plea specifically pleaded a deed from said plaintiffs in error to Grace B. Bell, it was possible that the proof would show a prior conveyance to another and a subsequent conveyance by that person to said Bell. Upon trial, proof was offered by both parties showing that said Bell was not the first grantee in the chain from the said Kelleys. A considerable amount of testimony was offered and received in connection with the alleged agreement with the defendant Burgess, but, while it centered around the alleged extension and reduction of the total monthly payment and probably does enter into the proposition of estoppel as pleaded, yet it is not deemed necessary here to refer to it further than by this general statement.

1. It is an unquestioned rule that courts will take judicial notice of the provisions of their own state statutes and of the state and federal Constitutions, among other things. By statute of this state governing pleading, it is specifically provided that it is not necessary to plead matters of which the courts take judicial notice.

2. Where the legislative body deems it wise and to the best interests of the citizens of the state to adopt a specific statutory provision for the express purpose, it is binding upon this court, as a rule of law, unless the same contravenes some provision of the Constitution of this state or that of the United States. Likewise, when such a provision is adopted, it has the effect of taking that particularly dealt with subject out of the general rule and substitutes such special provision as the governing law of that particular subject, and, thereafter, that which falls within the special classification thereof must be governed by its provisions to the exclusion of a general statute.

3, 4, 5, 10. Section 9814, O. S. 1931 (5391, C. O. S. 1921), is such a special statute. It has been in effect in this state for years. It was in effect at the time of the inception of the first of the negotiations and all subsequent happenings involved in this action, and had been for a number of years prior thereto. It is an integral part of that portion of the Code dealing directly with the building and loan associations, adopted for the express purpose of controlling their acts, and outlines the course to be followed by such associations with reference to the transfer of certificates of evidence of stock in said corporations. It provides, among other things, that no certificate shall be transferred so long as the holder is indebted to said association, unless the board of directors consent to such transfer. It provides, also, that such certificate or evidence of stock shall be transferrable at the pleasure of the holder according to provisions of the by-laws, subject to all payments due or to become due. It also provides that after such transfer the assignee to whom so transferred shall be a member of said corporation, and have and enjoy all the immunities, privileges, and franchises, and be subject to all the liabilities, conditions, and penalties incident thereto, in the same manner as the original subscriber or holder "would have been." The whole is limited, however, by the fact that where indebtedness exists no certificate shall be transferred except by consent of the board. It is their option to prevent same so long as indebtedness exists.

The building and loan mortgage procedure and provisions governing same are entirely different from the ordinary commercial mortgage, in this state, at least. The failure to observe this distinction has led to a confusion that ought not to exist; the result of that confusion has been the attempt to apply the general rule applicable to ordinary mortgage loans to the association form loan. The two are not commenced or completed in a similarity of manner. Their sole similarity is the fact that a note and a real estate mortgage are executed. The method of repayment is by no means the same. Special legislation was a necessity to legalize the building and loan system. The building and loan set-up was and is for a special purpose; that purpose was to supply a special form of loan, presumptively, at least, to assist the citizen of small means to acquire a home and pay for it by small monthly installments, when he could qualify under the special provisions governing. The first necessity was to become a subscriber for stock in the corporation equal to the amount of the loan, and that regardless of the value of the property security offered. That was a particular class of stock. That stock must be assigned as additional security, and it was held by the corporation as collateral security; then there must be paid in a designated monthly payment; after deduction for interest, the balance of such payment must be applied, not on the principal note given, but on the stock; such payments, together with any dividends that might be declared from earnings, are applied to the payment of this stock subscribed for; when payments and earnings are sufficient, the stock is matured and the loan is canceled; no maturity of the loan arises until the stock is fully paid; then the mortgage given as other security is released. The maturity date of the note and mortgage is at all times uncer-

tain since there may be no dividends to apply or the earnings may be smaller and reduce the dividend contemplated. Losses might even occur that would destroy all dividends. Therefore, the procedure is, throughout, predicated upon a mutuality of interests. The borrower must be a stockholder as well as borrower and participate in earnings or losses. Borrowers found that fact out during the late depression in many instances. None of these conditions exist under the ordinary form of mortgage secured loan. That consists simply of borrowing; giving security; the principal is certain; due date is certain and a definite interest rate exists; the borrower is not concerned with, nor does he participate in, earnings or losses of the lender.

This statute was passed in recognition of that difference and to provide a "rule of thumb" to guide and govern the parties in their subsequent dealings with each other under the special provisions permitting such a system of loan to be made. It recognized the fact that the borrower under the plan might wish to sell the property and that the association might, or might not, wish to accept the new owner of the property as a member of the association and permit him to take title to the stock in lieu of the first or original owner and substitute such person as owner of record. It does not, therefore, make the acceptance of such assignee of the stock so held as collateral obligatory upon the corporation so long as the indebtedness or any part thereof remains unpaid, but does provide that if it wishes, the corporation may consent to such transfer notwithstanding the fact that such holder is indebted. If it does so consent, then the assignee or transferree becomes a member with all the privileges and liabilities attached thereto, in the same manner as the original subscriber or holder would have been. The words "would have been" show the import of and the intent of the statute. The subscriber, being the original mortgagor, ceases to be a member when he transfers the stock and the company consents to such transfer and accepts the new person by such consent and looking to such new owner of said stock for payments thereon in accordance with the terms and conditions of the note and original contract. Likewise, when the transfer under the assignment is completed and consented to by the company, the old member loses his membership; divests himself of the stock; the new holder of said stock by assignment so completed assumes his position and relationship with the association. The mutuality ceases. The old member has no further claim to stock dividends; the company has no further right to look to him for payment of monthly stock payment dues. Accrued dividends already credited, or due to be credited, pass to the new holder of said stock. These acts of assignment and consent by the association to such assignment, and such consent is shown, as here, by change of the association records accordingly, complete a statutory novation under this section regardless of the intent of the parties. So that, by consenting to the stock transfer, the association itself completes the statutory novation or substitution of a new debtor and effectually completes the release by novation of the former stockholder and mortgagor from further personal liability, retaining nevertheless, by reason of assumption, the lien of the mortgage to secure the debt. The debt and the mortgagor's liability for it are not the same thing in law. 41 C. J. 785, paragraph 887, and cases cited thereunder.

Notwithstanding the statutory provisions setting up such novation, there is nothing to prevent the interested defendant from pleading an estoppel as an additional defense to the right of recovery of a personal judgment, if the facts justify.

As to the statutory novation, plaintiffs' evidence, coupled with the defendant's exhibit No. 1, offered without objection, was sufficient to establish the same without question. The petition directly alleged assumption by Grace B. Bell and sought personal judgment against her thereunder, the record disclosing such personal judgment was taken as against her. Further, their witness, Mr. Hays, secretary of the association, on direct examination states at time note was given 30 shares of stock were purchased; it was still held by association; that it had been transferred as follows: (1) from Kelleys to Effie Lindsey; (2) from her to one Franklin; (3) from him to C. A. Wallace; (4) from him to Grace B. Bell; (5) from Grace B. Bell to H. L. Burgess; that at time of trial was still held by association as collateral security. On cross-examination he testified that the loan would have been retired if all payments had been duly made, with one other condition, to wit, "providing we could have paid the regular dividends" on the stock anticipated when the loan was made. Said exhibit No. 1 was identified by the same witness as the original sheet of the Kelleys' loan; that it was the only record kept of that loan. That sheet shows same in Kelley's name to

March 4, 1925, when the name of Lindsey is shown thereon; in July of same year same shows transferred to Franklin; in January, 1928, it shows transferred to Grace B. Bell, in whose name it remains until in 1931. when there is shown under date of 5-16-31 a credit of $127.30 paid by Burgess; later on, 7-11, same year, Burgess is credited with $38.30 more. After these credits on their loan sheet, it is shown the loan charged in the name of Grace B. Bell, H. L. Burgess, C. E. Wallace, Franklin and Burgess, the names of Kelley and Lindsey being dropped entirely.

The statute relieved the courts from determining what would and what would not constitute a substitution of a new debtor for the old by providing that, when the association elected to consent and did consent to the transfer of the stock into the new transferree without requiring payment and without standing upon its right not to transfer so long as the transferring member was indebted to the association, then the assignee, by transfer of said stock, thereupon became "a member of said corporation" entitled to the immunities, privileges, and franchise and subject to all liabilities, conditions, and penalties incident thereto "in the same manner as the original subscriber or holder would have been." It could have refused to transfer and thereby held the original subscriber liable on the stock. If it had so refused, then the only way the Kelleys could have been discharged as stockholders and members, subject to payments and assessments, would have been by their grantee negotiating a new loan and paying off and securing release of the old. The association will not be heard, however, in the face of the testimony of its secretary and only witness, and the introduced copy of the only record extant of the transaction, to say in this court that it did not know of assumption by subsequent purchasers nor that it did not consent to the transfer of the stock to said persons, as both the testimony and the record, including the petition, show conclusively that it did know and did indicate fully its consent.

The fact of seeking personal judgment and obtaining same against said Bell under her assumptioin in this action distinguishes this case from the cited case of Hurst v. Merrifield (Ore.) 23 P. (2d) 124. Defendant in error argues at length these propositions: One, that one Burgess had a deed in blank which was noneffective to pass title; the other, that mortgagee did not know there had been an assumption and agreement to pay the debt. Without passing upon the legal sufficiency of this claimed blank deed being sufficient to pass title, the direct difficulty with their first contention is that their own records show a direct recognition by them at least twice as being the owner and they dealt with him under same in the proposition to pay in so much and do some repairing and fixing up of the property. As to the second contention, as already pointed out, their pleadings and proof show direct knowledge of said assumption. Such pleadings and proof must take precedence over mere argument. One of the characters prominent in ancient history, as we remember it, got himself into a very considerable difficulty by blowing his breath on something hot to make it cooler, and, later, on something cool to make it warmer, and from his experience, so we are told, originated the expression that one cannot blow both hot and cold at the same time.

The briefs submitted, in so far as authorities cited are concerned, do not assist greatly in clearing the issues here, since neither cite case law nor text-book authority affecting building and loan mortgages specifically, although decisions pertinent do exist. Evidently none were cited to the trial court, and, just as evidently, the trial court overlooked this statutory provision, nor was it called to his attention, for that court tried this action throughout upon the theory that the defenses of novation and estoppel were the primary issues, and particularly questioned the propriety of the right of third persons to keep the obligation alive as against the defendants Kelleys.

The general rules applicable as applied to building and loan associations, are set forth in 9 C. J. 937, under "Assignment or Transfer." There it is stated:

"A member of a building and loan association may sell, assign and transfer his shares to another member or to a third person on compliance with such conditions as the by-laws prescribe. These conditions frequently consist of the payment of a transfer fee, the payment of the indebtedness for which the association has a lien on the shares, and a transfer on the books of the corporation, it being the general rule that the assignment is not binding upon the association until entered on its books, although the association may waive a transfer on its books, and it is estopped to deny the validity of any transfer after recognizing its validity for any purpose advantageous to itself."

Further on therein, it is said:

"On a complete and regular transfer being made, the assignee assumes the assignor's relation as a stockholder. He becomes

vested with the title to all the accumulations on the shares of stock as fully as if he had originally subscribed for them and paid the dues thereon, and, on the other hand, he becomes liable to assessments."

And at page 960, we find:

"However, where the mortgage secures all the obligations of the member and borrower, or where the transferee expressly agrees to pay all sums owing to the association by the borrower, the purchaser stands in the shoes of the vendor and is liable for all his obligations to the association; he is charged with notice of all the terms of the original contract, and both he and the association are bound by the same rules of estoppel as would be applicable in a contest between the association and the mortgagor."

Many cases are cited in support of the text. Perhaps the holding is as well expressed in the case of North Texas Bldg., etc., Association v. Hays, 23 Tex. Civ. App. 98, 56 S. W. 580, as it could be stated. There it is held that one who buys the stock of a building and loan association, pledged by the borrower member as security for the loan, and assumes the obligations of the borrower as part of the price of the land mortgaged to secure the loan, becomes a member of such association when it accepts him as a substitute for the borrower and "assents" to the conveyance of the land, and allows him the rights and privileges of a stockholder, even though the stock is not transferred on its books. Sawyer v. Bahnsen, 102 Okla. 41, 226 P. 344, and cases there cited.

In this case here under consideration, by pleadings, proof, and records and testimony of the active secretary, it uncontrovertibly appears that each of the above steps set forth in the cited case as outlined hereinabove took place, to wit, the purchase, the assumption, the consent and assent and transfer of the stock on the books or record of the association.

This rule and these holdings appear to be the general and established rule regardless of, rather without the aid of, any statutory provision. It must, therefore, be the more apparent that it is the rule in this state, when the statute supplies the positive rule itself, and where, as here, the association vitalizes it by consent to assumption and transfer. The judgment of the trial court rendered in this cause is, therefore, erroneous and contrary to the law of the state in so far as it renders a personal judgment against the plaintiffs in error, which is the only portion thereof appealed from.

We come now to the matter of estoppel.

Under the facts as hereinbefore pointed out and the existing differences both as to procedure and statutory provisions, all quite fully set forth and distinguished hereinabove, and particularly as here, where the original mortgagors made no payments for many years, and where it fully appears others were recognized and looked to during all that time for payments, which payments were for "a purpose advantageous" to the association, to wit, payment of assessments on the stock, dues, and interest, and also where a specific plea of the petition sets up direct assumption and the proof fully sustains the same, and with the express statutory provision shown, with the association so undoubtedly consenting to and acquiescing in the transfer, so fully, in fact, as to show same on their books and their own officer testifying fully thereto, our view is that thereafter, as attempted to be done here, to attempt to secure and enforce a personal judgment after that lapse of years violates every rule of equity and good conscience, as well as the statute in question, and fully justifies the invoking of the plea of estoppel. Therefore, notwithstanding the fact that we have already held herein that, under the facts, and by virtue of the statutory provision carried out as shown, a novation was fully completed, and that by reason thereof the court erred in rendering the personal judgment herein complained of, we are constrained to hold, further, that the plea of estoppel was well taken and sustained and that by reason of that plea alone the court should not have rendered the said personal judgment against the plaintiffs in error.

We have commented rather fully on these questions for the reason that we do not find, nor is there cited in the briefs, any case where this precise question affecting building and loan mortgages and loans and procedure thereunder has been raised or passed upon in this state.

6. No necessity arises to comment at length on the issue of the plea of the statute of limitations. It cannot be sustained here. The cited case of Union Central Life Insurance Co. v. Adams, 169 Okla. 572, 38 P. (2d) 26, states the rule as applied in this state, that where an acceleration clause exists giving the option to declare or not declare as mortgagee may elect, is permissive and not self-executing, and that under such circumstances the limitation does not commence to run on partial default, but only from maturity of full principal or last installment of the principal.

7. The rule is too well established in this state to need citation of authorities or extended discussion that it is not necessary for a party to an action to introduce proof upon trial to sustain a fact where it is admitted by the pleadings of his adversary, or that may be admitted by the adversary by proof at trial, or any other form of complete admission of the fact itself.

8. The rule of liberal construction of pleadings exists in this state and has existed too long to necessitate long discussion or lengthy citation of authorities. Therefore, it may be said that, where a pleading states a cause or defense, although inaptly or incompletely, particu'arly where not challenged on that ground before the trial court, it will be construed, if possible, so as to give consideration to the plea or defense so incompletely stated; and this is so to the further extent that where a variance occurs, but is not called to the trial court's attention, the pleading will be deemed to have been so amended to conform to the proof. Parsons v. Heenan, 104 Okla. 86, 230 P. 502. This is particularly so, as said in Sweat v. Skaggs, 138 Okla. 14, 280 P. 591, where the same is raised in this court for the first time.

9. On the question of change of theory in the appellate court by either party to the action, we have already commented to the extent of calling attention to the argument in the briefs which is in direct opposition to pleadings and proof in the lower court. It is sufficient to say here that the same cannot be permitted here in this case.

For the reasons stated herein, the judgment of the trial court is reversed, but only in so far as it renders personal judgment against S. E. Kelley and Maude Kelley, this being the only question involved in the appeal to this court, with directions to the trial court to correct its former judgment to conform herewith by striking therefrom said personal judgment against these defendants, S. E. Kelley and Maude Kelley, and when so corrected the same to stand as rendered in all other respects; plaintiffs in error to recover their proper costs herein.

The Supreme Court acknowledges the aid of Attorneys Morse Garrett, C. E. Baldwin, and Wm. Fleetwood, Jr., in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Garrett and approved by Mr. Baldwin and Mr. Fleetwood, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BAYLESS, PHELPS, and GIBSON, JJ., concur. BUSBY, WELCH, and CORN, JJ., absent.