HOME BLDG. & LOAN ASS'N v. WILLS.

*95 P. 2d 862.*

No. 26479. Jan. 17, 1939.

Rehearing Denied June 13, 1393.

Application for Leave to File Second Petition for Rehearing Denied Nov. 28, 1939.

Albert Bell, for plaintiff in error.

Hunt & Eagleton and J. P. Greve, for defendant in error.

GIBSON, J. This is an action for money had and received wherein the plaintiff below, as a borrower and member of the defendant building and loan association, seeks to recover certain alleged overpayments made to said association on his loan and stock certificates. From a judgment in favor of the former, both parties have appealed. The parties will be designated in the order of their appearance at the trial.

Plaintiff became the owner of certain real property upon which the defendant association held a mortgage to secure the sum of $8,500 as evidenced by a note. Plaintiff's grantor held 85 shares of stock in said association, each of the par value of $100, which had been pledged to defendant as additional security. It appears that after his purchase of the property plaintiff considered himself owner of said shares and a member of the association, and that the parties thereafter dealt with each other accordingly.

The note was payable on or before 108 months after its date of September 13, 1922, provided for interest at the rate of

112

10 per cent. payable monthly for 108 months, recited that it was secured by the aforesaid mortgage and 85 shares of stock, and contained the following specific provision:

"If 108 monthly payments are made as they become due on said shares of stock, said certificate shall, at the expiration of 108 months, be accepted in full payment of this note, provided there is no default in the terms of this note or the mortgage securing the same."

Plaintiff complied with the above-quoted provision in the note by paying all his 108 monthly installments on the stock together with all interest and charges required by the note and mortgage. Instead of retiring the note and mortgage upon such payments and accepting the stock in full satisfaction of the debt, defendant collected from plaintiff 17 additional installments on the stock and certain additional interest payments. By this action plaintiff seeks to collect these additional payments as overcharges under his contract.

Defendant's plea, among other things, was that the stock had not matured upon the payment of the 108th installment; that is, the installments, together with profit or dividend accumulations credited to the stock, had not at that time reached the full sum of $8,500, the amount of the loan and par value of the stock. Defendant assumed the position that under the by-laws of the association and the statutes the plaintiff was not entitled to release of his mortgage until the stock had so matured.

The evidence is that the stock did not actually mature in the manner above stated until plaintiff made his last payment to defendant, at which time the debt and mortgage were promptly released by defendant.

The quoted provision in the note above, standing alone, would entitle plaintiff to release of his debt and mortgage upon payment of the obligations therein stated, and permit recovery, and require affirmance of the judgment appealed from. But the general rule is that

in addition to the note and mortgage the by-laws of the association and the governing statutes are also a part of the contract. 9 C. J. 955, sec. 72.

In agreement with this general rule, we have heretofore stated the recognized plan governing loan transactions between building and loan associations and their members as regulated and controlled by the announced policy of the state in the applicable statutes. Kelley v. Garfield County Bldg. & Loan Ass'n, 180 Okla. 253, 68 P. 2d 811. In that case, when speaking of this character of loan, we said:

"That stock must be assigned as additional security, and it was held by the corporation as collateral security; then there must be paid in a designated monthly payment; after deduction for interest, the balance of such payment must be applied, not on the principal note given, but on the stock; such payments, together with any dividends that might be declared from earnings, are applied to the payment of this stock subscribed for; when payments and earnings are sufficient, the stock is matured and the loan is canceled; no maturity of the loan arises until the stock is fully paid; then the mortgage given as other security is released. The maturity date of the note and mortgage is at all times uncertain, since there may be no dividends to apply or the earnings may be smaller and reduce the dividend contemplated. Losses might even occur that would destroy all dividends. Therefore, the procedure is, throughout, predicated upon a mutuality of interests. The borrower must be a stockholder as well as borrower and participate in earnings or losses. * * *"

The foregoing statement is in accord with the general rule that installment stock in a building and loan association may not legally be issued to mature, or considered fully paid, at a stated time, in the absence of statutory authority to that effect (9 C. J. 935, sec. 31), and is also agreeable with the accepted doctrine that any time of maturity specified in the note or the stock will be considered an estimated time or a mere expression of opinion, rather than a guaranty. Farm & Home Savings & Loan Ass'n v. Martin

(Tex.) 88 S. W. 2d 459; Caston v. Stafford, 92 Mo. App. 182; Hough v. Maupin (Ark.) 84 S. W. 717. Our statement in the Kelley Case, above, defining the relationship of the association and its members, will not permit a holding that the clause fixing a definite maturity date would constitute fraud sufficient to permit the borrower to rescind his contract (9 C. J. 935, supra), especially in the absence of extrinsic fraud, which question is not here for consideration.

All purchasers of installment stock in the defendant association, both those who borrow and those who merely invest, are bound alike by the by-laws of the association and the statutes (see Farm & Home Savings & Loan Ass'n v. Martin, supra). The certificates of stock issued by defendant do not purport to fix a date for the maturity thereof, while the note in the instant case does purport to fix a so-called maturity date. Here, without proceeding further, it is seen that the mutuality of interest necessary to all members would thereby be destroyed. Unless the statutes authorize this, and the by-laws do not prohibit, we cannot sustain plaintiff's claims. Especially is this true if the by-laws do not provide for maturity of the stock at a fixed date.

Every share of stock is subject to a lien in favor of the association for unpaid installments and other charges incurred thereon, under the provisions of the charter and by-laws. Section 9800, O. S. 1931 (amended, 18 Okla. Stat. Ann. sec. 212; S. L. 1933, p. 95). The manner and terms upon which a loan shall be paid may be determined by the by-laws. Section 9803, O. S. 1931, 18 Okla. Stat. Ann. sec. 215. If the by-laws are silent in this regard, then loans are repaid as provided by section 9805, O. S. 1931, 18 Okla. Stat. Ann. sec. 216. Said section 9805 reads, in part, as follows:

"A borrower may repay a loan at any time by the payment to the corporation of the principal sum borrowed, together with interest, not to exceed twelve per cent. per annum, together with such per cent. of premium per annum as may have been bid for the preferences, or priority of such loan and any fines or charges that may be imposed upon such stockholder at the time of such repayment; * * * Provided, further, that when the by-laws of the corporation prescribe a different manner and terms upon which a loan may be repaid, then the repayment can only be made in accordance with the by-laws of such corporation."

The by-laws, sec. 8, art. 4, and sec. 4, art. 6, authorize borrowers to pay their loans in full on any pay day, after notice, and permit the payment of specified sums and multiples thereof at any time. These are the only sections pertaining specifically to the payment of loans, and they do not authorize acceptance of stock in payment after a given number of installments thereon have been paid. But section 2, art. 3, provides that each share of stock of the character here considered shall be "paid for in monthly installments of 60 cents per share, and estimated to mature in _____ months." Section 10, art. 3, reads as follows:

"When the amount of dues paid on a share plus the accrued net earnings, less all charges assessed against said share, equals the sum of one hundred dollars, the share will be deemed to have matured and the owner thereof shall then be paid one hundred dollars upon the presentation of the certificate which will then revert to the association to be canceled."

Thus, it is seen that a share owner may not receive par for his stock until his paid installments thereon and the accrued earnings, less charges, equal the par value of said stock. This must apply alike to borrowing owners and investment owners of stock. Neither the statutes nor the by-laws allow 100 per cent. credit for the stock until the same matures as above stated. And a borrower, otherwise, may not, under the instant circumstances, claim such credit.

This conclusion is reached after due consideration of the entire loan contract, including the by-laws and statutes. The quoted provision in the note, above, when considered in connection with the remainder of the contract, especially section 2, article 3, and section 10, article

3, above, was intended as a mere estimate of the time of maturity of the stock for the purpose of the application thereof at par in payment of the loan. Such is the general rule, as we have said, and the conclusion is the more strengthened by the fact that the by-laws specifically permit only an estimate of the maturity date.

The plaintiff was bound by his contract, and he must abide thereby. He was charged with knowledge of the powers of his association in such matters, and any apparent inconsistencies in its promises are temporized and controlled by its express and implied powers, and, we would say, in the absence of actionable fraud, seeming inconsistencies must be harmonized with its absolute powers.

Since plaintiff's cross-appeal is predicated upon the assumption that some portion or all of the loan transaction was void, there is no occasion to consider the assignments so presented.

The judgment is reversed.

BAYLESS, C. J., WELCH, V. C. J., and CORN, DAVISON, and DANNER, JJ., concur. RILEY and OSBORN, JJ., dissent. HURST, J., not participating.